IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILSON JUNIOR VELEZ-SANTIAGO** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 25-CV-0563** |
| | : | |
| **ARAMARK CORRECTIONAL** | : | |
| **SERVICES,** *et al.*, | : | |
| *Defendants* | : | |

**M EMORANDUM**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                      APRIL 11, 2025

    Plaintiff Wilson Junior Velez-Santiago, a pretrial detainee currently incarcerated at Chester County Prison ("CCP"), brings this civil action pursuant to 42 U.S.C. § 1983 based on allegations that Aramark, its employees, and the staff at CCP have continuously served "toxic foods." He also asserts claims of medical deliberate indifference against PrimeCare and one of its employees. Velez-Santiago seeks leave to proceed *in forma pauperis*. For the reasons set forth, the Court will grant Velez-Santiago leave to proceed *in forma pauperis*, dismiss his claims against some Defendants, and permit his remaining claims to proceed at this time.

**I.     FACTUAL ALLEGATIONS**[1]

    Velez-Santiago brings his Complaint against the following Defendants: (1) Aramark Correctional Services; (2) John or Jane Doe, the Aramark Prison Supervisor; (3) John or Jane Doe, the Aramark Lead Worker; (4) J. Massy, Prison Kitchen Supervisor; (5) Warden Howard Holland;

---

[1] The following allegations are taken from Velez-Santiago's Complaint and the attachments thereto. (ECF Nos. 2, 2-1.) The Court deems the entire submission to constitute the Complaint and adopts the continuous pagination supplied to the Complaint by the CM/ECF docketing system. Spelling, punctuation, and capitalization errors are cleaned up where necessary.

1

(6) Director Morroney, Director of Prison Services; (7) PrimeCare Medical Inc., the medical provider at CCP; and (8) Nurse Melissa.  (*See* ECF No. 2 ("Compl.") at 2-6.)

Velez-Santiago alleges that since April 22, 2024, he's "experienced countless stomach illnesses" that have caused him severe to extreme stomach and chest pain, nausea, constant diarrhea, occasional vomiting.  (*Id.* at 9.)  Velez-Santiago contends that his stomach illnesses are caused by "toxic foods" that are being served throughout CCP, and he avers that these foods have been "causing prison wide food poison[ing]."  (*Id.*)  The "foods that cause these illnesses vary from breakfast oatmeal, creamed wheat . . . side salads, vegetables, potatoes, noodles, and at times depending on how it's made, the rice."  (*Id.*)  However, "the product that causes the most extremely painful illnesses [are] the meat products."  (*Id.*)  Velez-Santiago contends that many products, in particular the meat products, are "labeled not for human consumption" and contain warnings that they "may cause cancer."  (*Id.* at 9-10.)  He avers that Defendant Massy, as well as the "Aramark in house supervisor and staff members," are aware of the food issues because "they receive constant complaints."  (*Id.* at 11.)

On one occasion, an "Aramark staff member was fired for leaving food out overnight and serving it" to the prisoners because it caused food poisoning to everyone who was served.  (*Id.* at 9.)  Although this one incident was addressed by the firing of an Aramark employee, Velez-Santiago avers that illnesses still occur "daily, every other day, or every two days."  (*Id.*)  He avers that the prison has issued surveys to "investigate the food source," but those surveys are not always distributed properly, and everything "remains the same."  (*Id.* at 10.)  Velez-Santiago claims that Director Morroney and Warden Holland have "ignored requests slips" that he sent to them regarding the toxic foods, and they "have turned [their] eye . . . on the account that it saves them money."  (*Id.* at 11.)

Velez-Santiago avers that the bouts of stomach illnesses are a "constant prison wide condition that has become so normal that nurses routinely ignore any complaints of such." (*Id.* at 9.) In fact, on one occasion when Velez-Santiago spoke to Nurse Melissa during rounds about his stomach pain, she allegedly told him, "It's just the food, you will be fine tomorrow." (*Id.* at 9; ECF No. 2-1 at 3.) He further avers that he "had to complain of chest pains" to be prescribed antacids. (*Id.* at 10.)

Velez-Santiago contends that he lives "in constant stomach pain and constant diarrhea" because of the "toxic foods," and he has no other option but to eat the food knowing what the result will be. (*Id.*) He alleges that he "can never recover fully and it feels like an ongoing torture." (*Id.*) Velez-Santiago avers that he is "not complaining about food portions, the taste, or even quality as far as 'good food' goes," but he merely wishes to "no longer suffer from toxic food illnesses and be subjected to food that is not for human consumption and can or may cause [him] cancer in the future."[2] (*Id.* at 10-11.) He seeks an injunction ordering CCP and Aramark "to stop serving cancerous/not for human consumption toxic foods" and monetary damages totaling $350,000. (*Id.* at 8.)

---

[2] To the extent that Velez-Santiago intends to assert claims on "behalf of all inmates" (*see* Compl. at 10), he may not do so. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). Furthermore, "a plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)).

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915, Velez-Santiago is granted leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.³ Accordingly, § 1915(e)(2)(B)(ii) applies, which requires the court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Velez-Santiago is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021).

## III.   DISCUSSION

Velez-Santiago brings his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Velez-Santiago's

---

³   However, as Velez-Santiago is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

4

claims are best characterized as Fourteenth Amendment claims based on the Defendants' alleged failure to provide him with a proper diet and proper medical care.[4]

### A.  Conditions of Confinement – Nutritionally Adequate Food

Prison officials have a constitutional duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). The Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger" to their health and well-being. *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (*per curiam*) (internal quotation marks and citation omitted). It has been held that "prison officials may violate the [Constitution] by serving unsanitary, spoiled or contaminated food if the prisoner also alleges that he or she suffered a distinct and palpable injury." *See DeJesus v. Carey*, No. 15-2504, 2016 WL 6134540, at *3 (M.D. Pa. Oct. 20, 2016) (citing *Robles*, 725 F.2d at 15); *Escobar v. Mora*, 496 F. App'x 806 (10th Cir. 2012) (inmate stated a claim when he alleged that he lost thirty pounds and suffered psychological and mental injury because an officer spit in food).

In the context of an alleged failure to provide a proper diet, "[u]nconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). Whether the deprivation of food is objectively serious for purposes of establishing a constitutional violation

---

[4]  Because Velez-Santiago was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005).

"depends on the amount and duration of the deprivation." *Duran*, 923 F. Supp. 2d at 720 (internal quotations omitted). To satisfy the subjective component of the analysis, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Velez-Santiago has adequately alleged an objectively serious deprivation. Since April 2024, he has experienced countless and frequent stomach illnesses because of various foods being served by Aramark. (Compl. at 9.) He allegedly suffers constant stomach pain, nausea, and diarrhea, as well as occasional vomiting. (*Id.*) He claims that the bouts of stomach illnesses are a "constant prison wide condition, and he avers that many of the food products served are "labeled not for human consumption" and contain warnings that they "may cause cancer." (*Id.* at 9-10.) Finally, Velez-Santiago avers that despite knowing what the likely result will be, he has no other option but to eat the food served to him. (*Id.* at 10.)

Velez-Santiago has also adequately alleged facts supporting an inference of deliberate indifference at this early stage of the litigation as to certain Defendants. Specifically, he avers that J. Massy, as well as Aramark and its "in house supervisor and staff members," are aware of the food issues because "they receive constant complaints," and he avers that the kitchen "failed a Health and Sanitary Inspection during this time period." (*Id.* at 11-12.) He also avers that surveys have been issued to prisoners to "investigate the food source" of the stomach illnesses, but nothing has changed. (*Id.* at 10.)

Construed liberally, these allegations are sufficient to state a plausible claim that Velez-Santiago was denied adequate nutritional food, and he will be permitted to proceed on his deliberate indifference claims against Aramark Correctional Services, its Prison Supervisor (John or Jane Doe)[5] and Lead Worker (John or Jane Doe), and the Prison Kitchen Supervisor, J. Massy, in their individual capacities only. *See Stone v. Aramark, Inc.*, No. 20-428, 2022 WL 124650, at *2 (N.D. Ind. Jan. 13, 2022) (plausible deliberate indifference claim pled against food preparer where prisoner alleged that meals served within a period of eight months often contained spoiled or rotten food causing him food poisoning, stomach pain, vomiting, and diarrhea); *Gonzalez v. Neal*, No. 22-316, 2022 WL 3368811, at *2 (N.D. Ind. Aug. 16, 2022) (claims that prisoner was served spoiled and contaminated meals for a period of several months, during which time he often went hungry, stated a plausible claim for deliberate indifference); *Drennon v. ABL*, No. 06-126, 2006 WL 3448686, at *2 (M.D. Tenn. Nov. 27, 2006) (prisoner permitted to proceed with Eighth Amendment claims based on allegations that poor food quality caused him to experience weight fluctuations, stomach viruses, diarrhea, and constipation).

Velez-Santiago's allegations against Director Morroney and Warden Holland,[6] however, are insufficient to state a plausible claim against them because it appears these high-level officials

---

[5] To the extent that Velez-Santiago seeks to assert a claim against the Aramark Prison Supervisor in his or her official capacity (*see* Compl. at 3), this claim is not cognizable because Aramark is a private entity susceptible to suit. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit") (citing *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F.Supp.2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit.")). Accordingly, any official capacity claims against Aramark's prison supervisor will be dismissed with prejudice.

[6] Velez-Santiago checked the box to indicate that he intends to present claims against Warden Holland and Director Morroney in their official capacities, as well as in their individual capacities. (Compl. at 5.) Official capacity claims against county employees at CCP are indistinguishable from claims against the Chester County. *See Graham*, 473 U.S. at 165-66 (quoting *Monell*, 436 U.S. at 690 n. 55). To state

were sued based solely on their positions at CCP, rather than any facts from which their personal involvement, knowledge and acquiescence, or any other basis for liability could be inferred.[7] *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Specifically, Velez-Santiago alleges in a conclusory manner that he wrote to Morroney and Holland, but the food issue was not addressed. (Compl. at 11, 16; Exhibits (ECF No. 2-1) at 5.) This is not a sufficient basis for liability. *See Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (*per curiam*) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Simonton v. Tennis*, 437 F. App'x 60, 63 (3d Cir. 2011) (*per curiam*) ("The District Court correctly concluded that judgment on the pleadings was warranted on Simonton's failure to

---

an official capacity claim/municipal liability claim against Chester County employees, Velez-Santiago would have to allege plausibly that a county policy or custom caused a constitutional violation. *See Monell*, 436 U.S. at 694; *Natale*, 318 F.3d at 583-84.

Velez-Santiago fails to allege that he suffered a constitutional violation due to a policy or custom of Chester County. The only allegation he makes is that Director Mooney and Warden Holland have continued to allow "toxic foods to be served" because it "saves them money." (Compl. at 11.) However, this conclusory allegation is too speculative to support a claim of deliberate indifference. *See Sims*, 635 F. App'x at 20 (summarily affirming dismissal of *Monell* claims against prison medical contractor where plaintiff's "complaint stated that Wexford had an open practice, policy, or custom of deliberate indifference in order to save money" and "[h]is statement of facts merely repeated this"); *Winslow v. Prison Health Services*, 406 F. App'x 671, 674-75 (3d Cir. 2011) (allegation that plaintiff was harmed by "policies to save money" is conclusory); *Haar v. CFG Health Servs., LLC*, No. 22-7595, 2024 WL 4880349, at *6 (D.N.J. Nov. 25, 2024) (assertion that CFG has "a policy to provide inmates with as little medical care as possible . . . to save money" is too speculative and conclusory to support a deliberate indifference claim). The Court will permit Velez-Santiago to amend his pleading to reassert an official capacity claim/*Monell* claim against Chester County should he be able to cure this defect.

[7] "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

8

investigate grievances claim."); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) ("Moser's failure to process Burnside's medical treatment, food service, and commissary grievances, although not to be commended, does not rise to the level of a violation of a constitutional right."). Accordingly, the Court will dismiss Velez-Santiago's claims against Director Morroney and Warden Holland without prejudice for failure to state a plausible claim.

B.  **Deliberate Indifference to Medical Needs**

Velez-Santiago asserts constitutional claims for deliberate indifference to his serious medical needs. To state a Fourteenth Amendment claim based on the failure to provide medical care, a pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835; *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326,

9

347 (3d Cir. 1987) (internal quotations omitted). A serious medical need must be more than "mere discomfort or inconvenience." *Hill v. Aramark Corr. Servs.*, No. 23-406, 2025 WL 91432, at *6 (S.D. Ohio Jan. 14, 2025), *report and recommendation adopted*, 2025 WL 755114 (S.D. Ohio Mar. 10, 2025) (citing *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal quotations omitted)). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners.").

Courts are reluctant to find that occasional gastrointestinal symptoms alone may constitute a sufficiently serious medical need. *See, e.g.*, *Rains v. Wellman*, No. 20-32, 2022 WL 18587783, at *7 (W.D. Mich. Dec. 30, 2022), *report and recommendation adopted*, 2023 WL 543075 (W.D. Mich. Jan. 27, 2023) (citing *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (finding that the plaintiff failed to produce sufficient evidence that his alleged stomach disorders constituted serious medical needs); *Smith v. Hepp*, No. 18-669, 2022 WL 1001183 (W.D. Wis. Apr. 4, 2022) ("Stomach distress often is not serious enough to support an Eighth Amendment claim") (citing *Riley El v. Godinez*, No. 13-c-5768, 2016 WL 4505038, at *11 (N.D. Ill. Aug. 29, 2016)).

Velez-Santiago contends that the bouts of stomach illnesses are a "constant prison wide condition that has become so normal that nurses routinely ignore any complaints of such." (*Id.* at

10

9.)  He avers that the "numerous staff members of PrimeCare" have been denying medical treatment to prisoners, including himself, when prisoners complain about stomach illnesses. (*Id.* at 11.)  Velez-Santiago references one occasion when he spoke to Nurse Melissa during rounds, and she allegedly "refused to put [him] down for a sick call," telling him that "It's just the food, you will be fine tomorrow." (*Id.*; *see also* ECF No. 2-1 at 3.)  He also alleges that he "always complains on sick calls" and although he has "received Tums and Pepto-Bismol on occasions," he sometimes does not receive any attention or sick call responses. (Compl. at 8, 10; ECF No. 2-1 at 24.)

Velez-Santiago's allegations against Nurse Melissa raise a vague claim of failure to treat on only one occasion.  It is unclear what Velez-Santiago conveyed to Nurse Melissa during this one instance, and whether any condition he complained of at that time could have constituted a "serious medical need" warranting treatment.  Velez-Santiago's conclusory allegations of deliberate indifference are also unaccompanied by any facts suggesting that Nurse Melissa knowingly disregarded an excessive risk to his health.  Moreover, Velez-Santiago's allegation that "staff members" or "nurses routinely ignore" complaints of stomach illnesses is too tenuous to support a plausible claim of medical deliberate indifference. *See Evancho*, 423 F.3d at 353 (noting that individual liability may only be imposed under § 1983 if the state actor played an "affirmative part" in the alleged misconduct) (quoting *Rode*, 845 F.2d at 1207).  Finally, it appears that Velez-Santiago did receive medication on occasion to treat his symptoms and there are no allegations that the medication failed to alleviate his complaints. *See Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) (*per curiam*) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state

11

tort law.'") (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Accordingly, Velez-Santiago's claims of medical deliberate indifference against Nurse Melissa will be dismissed without prejudice for failure to state a state a claim.

With respect to his claims against PrimeCare, Velez-Santiago avers that PrimeCare "has adopted a custom of brushing off complaints of stomach illnesses and ignoring them." (Compl. at 11.) The claims against PrimeCare cannot proceed as currently pled. A private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances. The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (quoting *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) to claims against medical contractor)). Rather, [t]o plead a § 1983 claim against a prison medical provider, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).[8]

---

[8] "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). To allege an unconstitutional custom, a plaintiff must state facts from which it could be inferred that a decisionmaker acquiesced in a practice that essentially constitutes "standing operating procedure." *Bielevicz*, 915 F.3d at 850. In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019). Velez-Santiago has not alleged that he was injured due to a failure to supervise, train, or discipline.

"To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or a custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (*citing Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). General allegations that simply paraphrase the standard for municipal liability do not support a plausible claim. *See Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." ) (citing cases); *see also Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim.").

Velez-Santiago did not plead any official policy. Instead, he avers only that PrimeCare has a "custom of brushing off complaints of stomach illnesses." (Compl. at 11.) This conclusory allegation fails to "plead knowledge [of the alleged violations] by a municipal decisionmaker." *See Thomas v. City of Philadelphia*, 779 F. App'x 99, 102 (3d Cir. 2019) (*per curiam*) (finding that the sole allegation that the City "knows or should know of the constitutional violations" was conclusory and insufficient to plead knowledge by a decisionmaker) (quoting *McTernan*, 564 F.3d at 658). However, because the Court cannot say at this time that Velez-Santiago can never allege a plausible *Monell* claim against PrimeCare, the dismissal will be without prejudice and Velez-Santiago will be given the opportunity to file an amended complaint if he can cure the defects the Court has identified with respect to his claims against PrimeCare.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Velez-Santiago leave to proceed *in forma pauperis*, dismiss his claims against Defendants PrimeCare, Inc., Nurse Melissa, Director Morroney, and Warden Howard Holland without prejudice, and permit his claims against Defendants Aramark Correctional Services, the Aramark Prison Supervisor (John or Jane Doe),[9] the Aramark Lead Worker (John or Jane Doe), and J. Massy to proceed at this time.

Velez-Santiago is given the option to proceed on his remaining claims or file an amended complaint in the event he seeks to amend his claims against Defendants PrimeCare, Nurse Melissa, Director Morroney, and Warden Holland.[10]  An appropriate Order follows, which provides further guidance for proceeding.


*NITZA I. QUIÑONES ALEJANDRO, J.*

---

[9] Any official capacity claims against the Aramark Prison Supervisor will be dismissed with prejudice.

[10] If Velez-Santiago files an amended complaint, his amended complaint must be a complete document that includes all of the bases for his claims, including claims that the Court has not yet dismissed if he seeks to proceed on those claims.  Claims that are not included in the amended complaint will not be considered part of this case.  *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).