In The United States District CourtHouse For
The Eastern District of Pennsylvania

Wilson J. Velez-Santiago
Plantiff

v.

Aramark Corr. Serv's. et al.
Defendan t(s)

Docket NO
25-0563
Civil Action—

Motion For Summary Judgment
Pursuant To Fed.R.Civ.P 56

And now, Comes Plantiff Wilson J. Velez-Santiago proceeding pro se To move for an Order Granting Summary Judgment in his favor by Stating as follows;

1. This case arose While plantiff was a pretrial detainee at the Chester County Prison between April 22, 2024 and September 24, 2025.

2. During Such period of time plantiff suffered multiple episodes of Stomach illnesses as the direct result of the prison food provided, prepared, and served by Aramark Correctional Services and Joshua Massi.

3. Discovery commenced on July 25, 2025 and Closed on Febuary 23, 2026.

4. A list of the undisputed Material facts setforth by

1

Plantiff is attached hereto as Exhibit A.

5. Based on these Material facts which are undisputed and cannot be disputed through any admissible and/or credible evidence plantiff is entitled to Summary Judgment under Rule 56 of the Federal Rules of Civil procedure.

6. Based on the Undisputed Material facts setforth in Exhibit A, Defendant's cannot create any genuine issues of Material facts requiring resolution by a trier of facts.

Whereas, Plantiff is entitled to Summary Judgment as a Matter of law and prays this Honorable court grants such relief in it's entirety.

By

Wilson J. Velez Ao

Date: 3/02/2026

Wilson J. Velez-Santiago

James T Vaughn #00996788

1181 Paddock Road

Smyrna DE 19977

2

Exhibit A

In The United States District CourtHouse For
The Eastern District Of Pennsylvania

Wilson J. Velez-Santiago
            Plantiff

        v.

Aramark Corr. Servs. et al.
            Defendant(s)

Civil Docket No
    25-0563

Plantiff's list of Undisputed
        Material Facts

1.) Between April 22, 2024 and September 24, 2025 Plantiff was incarcerated as a Pretrial detainee at the Chester County Prison.

2) Defendant Joshua Massi at all relevant times was employed by the Chester County Prison as a Correctional officer.

3). At all relevant times Joshua Massi was assigned the Job of Prison Supervisor II - Kitchen Supervisor.

4.) At all relevant times Defendant Joshua Massi was in charge of all the Kitchen Operations within the Chester County Prison including but not limited to the preperation, cooking, and Service of food and the sanitary conditions of the Kitchen Department.

5) Defendant Aramark correctional services at all relevant times was the food products provider for the

Chester County Prison.

6.) At all relevant times Aramark correctional Services worked with the Chester County prison alongside with Defendant Massi as an outside contractor and participated in the preparation, cooking, and service of food as well as in the conditions of the kitchen department.

7.) Defendant Massi and the Aramark Defendants at all relevant times created and disregarded substantial risk of harm to Plantiff's health and safety.

8.) Defendant Massi and the Aramark Defendants maintained practices and procedures which denied plantiff the right to a Nutritionally adequate food while at the Chester County prison causing Plantiff physical harm.

9.) Defendant Massi and the Aramark Defendants at all relevant times were aware of and disregarded conditions within the kitchen Department which posed a Substantial risk of serious injury to Plantiff.

10) Defendants failed inspections by the Chester County Health Department repeatedly which show that they maintained unhealthy practices and procedures which caused Plantiff physical injury.

11) Plantiff suffered multiple episodes of severe Stomach illnesses which at times were extremely painful and amounted to a physical torture as a result of Defendants actions.

12) Defendants actions violated Plaintiffs Fourteenth Amendment rights to Due process.

13) Defendants served Plaintiff Toxic foods knowingly and reckless1y causing physical injury.

By

William J Velez Ao

Wilson J Velez-Santiago

Dated: 3/02/2026    00996788

James T Vaughn

1181 Paddock Road

Smyrna DE 19977

3

In The United States District CourtHouse For
The Eastern District of Pennsylvania

Uvison J Velez-Santiago
          Plantiff

          V.

Aramark Corr. Servs., et al.
          Defendant(s)

Docket No
  25-0563

Civil Action

Brief Memorandum In Support
Of Plantiffs Motion For
Summary Judgment

And now, Comes Plantiff captioned above proceeding pro se
to present this memorandum in support of his Motion
For Summary Judgment. ;

I. Background and Procedural History

On Approximately January 31, 2024 plantiff filed
his original complaint later Amended on about April
22, 2025 alleging that Defendant Joshua Massi and
the Aramark Defendants denied him a nutritionally
adequate diet by Serving him toxic foods causing him
constant stomach illnesses.(see Exhibit A "Amended complaint"
at page 5 paragraph D and the attached 4 pages consisting
Of the Statement of Facts underlying claims).

Defendant Joshua Massi filed his Answer and

1

Affirmative defenses to the Amended complaint.(See Exhibit B). After this Honorable court entered an order directing the Armark defendants to file a responsive pleading, the Aramark defendants filed their Answer with Affirmative Defenses on July 25, 2025. (See Exhibit B-1)

On July 25, 2025 this Honorable court ordered the parties to commence discovery. After some issues with Discovery Plantiff Sought a Motion To compel discovery which this court granted as uncontested on November 24 2025. Also, this court entered a Revised scheduling order at Plantiffs request on January 7, 2026.

Plantiff has also filed an Application for Sanctions based on a number of actions by the defendants.

This Motion follows:

## II. Standard of Review

Rule 56 governs Summary Judgment motion practice. See Fed. R. Civ. P 56. Specifically, this Rule provides that Summary Judgment is appropriate "if the movant Shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id at 56(a). Citing Hughes V. Muhlenberg Twp. Police officer Malachi Schmidt, 2026 U.S. Dist. Lexis 35858 A fact is "Material" if proof of its existence or non-existence "might affect the Outcome of the suit under governing law," and a dispute is "genuine" if "the evidence is such that a reasonable Jury

2

could return a verdict for the nonmoving party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). When evaluating a motion pursuant to rule 56, the court must view the evidence in light most favorable to the nonmoving party. See Qin v. Vertex, Inc., 100 F.4th 458, 469 (3d Cir 2024). ("Summary Judgment is appropriate only if, construed in the light most favorable to the non-moving party, the record shows that there is no genuine dispute of material fact and that the moving party is entitled to Judgment as a matter of law.")

Consistent with Rule 56, the movant "bears the initial burden of informing the ... court of the basis for its motion and identifying those portions" of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Carett, 477 U.S. 317, 323, 106 S.Ct 2548, 91 L.Ed 2d 265 (1986). This Burden can be met by showing that the nonmoving party has "failed to make a showing sufficient to establish the existence of an element ███ essential to that party's case," Id at 322.

III. Factual and Legal Argument

On April 22, 2024 plaintiff arrived at the Chester County Prison. Shortly thereafter he started to experience stomach illness consisting of an ███ instance of vomitting, constant and severe diarreah, severe stomach pains and nausea. See Exhibit A at page 5 section

3

v. "Injuries"). This was a result of the prison food.(Id at page 5 paragraph D's Attached pages 1-41 at page 1 paragraph 1). Although the most severe symptoms were when eating, meat products alleged to be labeled "not for human consumption" and with warning labels that they may cause cancer, Plantiff experienced these episodes of stomach illnesses when eating multiple different foods served at the prison such as "breakfast oatmeals and creamed wheats, side salads, vegetables, potatoes, noodles and at times the rice." (Id at page 2 paragraph 2).

These same sort of illnesses were experienced by many other inmates as well.(see Exhibit C-1 through c-4) These prison wide illnesses prompted internal investigations consisting of surveys about what foods inmates have ingested during the periods in which the sicknesses were occuring.

These facts as alleged raise a claim of conditions of confinement. specifically that the Defendants failed to provide nutritionally adequate food to Plantiff during his incarceration at the Chester County prison.

Prison officials have a constitutional duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to gaurantee the safety of the inmates. see Farmer v. Brennan, 511 US 825, 832-33 (1994).

4

The Constitution "requires that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger" to their health and well-being. Duran v. Merline, 923 F. Supp 2d 702, 720 (D.N.J. 2013) citing Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983).

It has been held that "prison officials may violate the Constitution by serving unsanitary, spoiled, or contaminated food if the prisoner also alleges that he or she suffered a distinct and palpable injury." see DeJesus v. Carey, No. 15-2024, 2016 WL 6134540, at *3 (M.D. Pa. Oct. 20, 2016) (citing Robles, 725 F.2d at 15); Escobar v. Mora, 496 F. Appx 806 (10th Cir. 2012) (inmate stated a claim when he alleged that he lost thirty pounds and suffered ▓▓▓ psychological and mental injury because an officer spit in food.). In the context of an alleged failure to provide a proper diet, "unconstitutional punishment typically includes both objective and subjective components." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). "The objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective components ask whether the officials acted with a sufficiently culpable state of mind." Id. Whether the deprivation of food is objectively serious for purposes of establishing a constitutional violation "depends on the

5

amount and duration of the deprivation," Duran, 923 F.Supp. 2d at 700. To satisfy the subjective component of the analysis, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainees health or safety. See Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); See Edwards v. Northampton Cnty., 663 F.Appx 132,135 (3d cir 2016) ("We agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees.").

First, as to the first prong or the "Objective Component" Plantiff has alleged in his Ameded complaint that he constantly suffered from stomach illnesses during his duration in the Chester county prison. This involves over a year — 1 year and 5 months to be exact. (See Exhibit A page 5 Attached pages 1-4 to paragraph D) See for example Stone v. Aramark, Inc., 20-478, 2022 WL 124650, at *2 (N.D. Ind. Jan 13 2022) (Plausible deliberate indifference claim pled against food preparer where prisoner alleged that meals served within a period of eight months often contained spoiled or rotten food causing him food poisoning, stomach pain, vomitting, and diarrhea).

Plantiff's verified Amended complaint (Exhibit A) and Declarations by Four of his peers (Exhibits C-1 through

6

C-4) all support this allegation. In addition, Defendant Massa produced several Reports of Failing Inspections by the Chester County Health Department (attached as Exhibit's D-1 through D-9) Plaintiff requested all reports of such Inspections and after a five to six month battle Defendant Massa produced these reports but they are partial and not all reports are provided. Exhibit D-1 is dated 4/16/2024 as the "visit Date" at the bottom of page 1 of 2 the last rectangular box and signed on 4/17/2024 as seen in that same section.

It must be duly noted that these are Reports by the Chester County Health Department and the inspection targets a potential 55 different subjects as seen on Exhibit D-1 page 1 of 2. However it must be noted that in Exhibit's D-1 through D9 the vast majority of the 55 subjects are marked "N/O" which by definition on this Document means "Not Observed". The April 16, 2024 visit (Exhibit D-1) targeted on Seven (7) subjects as seen on page 1 of 2 and all seven read "In" which by definition means "In compliance." These were Subjects # 8, 13, 14, 18, 35, 46, 49, and 53.

However, the following report they provide (Exhibit D-2) is Dated October 8 2024 as the visit Date as seen on page 1 of 3 in the bottom rectangular Box. Again out of 55 subjects only 12 were observed and 11 of those were marke "Out" meaning "out of compliance" three of these are

7

marked "Out, R" which means "Out of Compliance, Repeat Violation." This means that between April 16 2024 and October 8 2024 there were at least 1 more inspection in which Defendants failed. The last they failed as far as these reports are concerned being April 24 2025 as seen in Exhibit D-8. In a time frame of 12 months between April of 2024 and April of 2025 Defendants failed at least six Health Inspections (Exhibits D-2, D-3, D-4, D-5, D-6, and D-8) and at least one between April 16, 2024 and October 8, 2024.

Out of these six known instances, there is three (3) sections on the Reports — 1) "FoodBorne Illness Risk Factors And Public Health Interventions" 2) "Good Retail Practices" and 3) "Food Employee Certification"

• D-2 shows Defendants failed Eight (8) subjects within Section 1 — Subjects 1, 8, 14, 17, 19, 20, 21, and 26. 14 and 26 being Repeat Violations, these Violations can potentially create FoodBorne illnesses. Next they failed One subject in Section 2 — subject #46 which is a repeat Violation. This Violation can cause the addition of pathogens, chemicals, and physical objects into foods.

• D-3 shows two Violations of Section 1 — Subjects 14 and 17. Violations which can cause FoodBorne illnesses which were also Violations in D-2. Next, they fail for two (2) Subjects in Section 2 — Subjects # 31 and 45

which again can cause the addition of pathogens, chemicals, and physical objects into foods.

• D-4 shows they failed for one subject in section 1 - Subject #14 once again which can cause FoodBorne illnesses. Next, they fail two (2) subjects in section a - #'s 45 and 48.

D-5 shows they failed again two (2) subjects in section 1 - #'s 14 and 36 violations they have repeated. Next, they fail one (1) in section 2 - #46.

D-6 shows they failed three (3) subjects in section 1 - #'s 4, ██████ 13, and 19. Next, they fail one (1) in section 2 - #45.

D-8 shows they fail four (4) subjects in section 1 - #'s 8, 14, 18, and 20. Next they fail four (4) in section 2 - #'s 36, 47, and 49, 53. They also fail # 55 in section 3

These reports show the likely ██████ cause of Plantiffs stomach illnesses during this period of time and this is sufficient evidence that the deprivation here was objectively serious.

Turning to the second prong or the "subjective component" plantiff can clearly show that Defendants acted with deliberate indifference and consciously disregarded a serious risk to Plantiffs health and/or safety. The evidence is overwhelming. Exhibit A - Plantiffs verified Amended complaint sets forth the facts surrounding his claims.

9

these facts are supported by Exhibits C-1 through C-4, In which four other inmates declare under the pains and penalties of perjury that they experienced and/or observed the same. Further these reports (Exhibits D-2, D-3, D-4, D-5, D-6 and D-8) support these facts. Defendants were fully aware of these issues. There is no possible way they can negate that fact. At least seven times they failed for creating risk of FoodBorne Illnesses and risk that pathegens, Chemicals, or physical objects be added to the food. In fact each time they were fined or warned that they will be fined. For example On page 3 of 3 of Exhibit D-2 at paragraph Four (4) Shows Defendants were Charged a "2nd follow up fee of $250 ... for failure to correct violations."

Next on page 2 of 2 of Exhibit D-3 In the "Published Comments" section at paragraph Four (4) Defendants were Warned that In a third follow up Inspection If the violations were not Corrected they will lose their License to operate and "a fee of $250 will be Charged" and also "A fee of $350 will be Charged for a third follow up Inspection and for each Subsequent Inspection..." The Same is true for the rest of the Instances. Thus defendants clearly acted with a culpable State of mind.

Furthermore to boast this fact that they acted with a culpable State of mind we can take a deeper look at Exhibits D-2, 3, 4, 5, 6, and 8. They reveal ~~a~~ disturbing

10

facts concerning Defendants actions. Actions that ended up in the Aramark defendants receiving criminal charges. It appears that on or about October 8, 2024 in Exhibit D-2 the Health Department noted on page 3 of 3 in the Published Comments section at paragraph 5 an investigation into food which caused a prison wide outbreak. Sentence 4 of this paragraph states that the "Dept" informed Aramark Staff on 10/3 "to hold all foods in Walk in, do not discard or serve any foods that had been previously prepared." It will appear that the Department returned to pick up all food which was placed on hold to do some lab test but that "NO pan of Chili was found during inspection on 10/4/24" "Department is also reviewing video of the Walk in area to determine who removed the food from the cooler. The 'Dept' is consulting with our legal team to discuss legal action if Aramark did in fact discard food that had been placed on a hold order."

To explain a bit more on what this report is speaking about, On or about on October 2 2024 Plantiff and the majority of the prison population became very Sick after eating the prison food. This was probably the most severe case Plantiff experienced. It is clear now that between April 16 2024 and October 8, 2024 Defendants did in fact fail at least One additional Health Inspection on 10/4/2024 as discussed in D-2 above. The Health Department

11

ordered Defendants to hold all foods which were previously prepared in a Walk-in cooler or freezer. This "hold order" was put in place in order for the department to conduct Lab test on the food to determine the source of the prison wide food poisoning. However, when they returned to pich the food up it was gone. It was determined that Aramark employees discarded the food on purpose to prevent the Department from testing the food. This will later result in Aramark being criminally charged. The Aramark defendants were caught on camera doing this. In Exhibit D-5 on page 3 of 3 in the "Published Comments" Section the Department comments on a Suspected "foodborne" outbreak. In Exhibit D-7 page 2 of 2 "Published Comments" Section on paragraph 7 you can see that on Febuary "1, 2025 ~ the date of Inspection as seen in the top right corner of the same page the Department States that a "non-traffic citation was filed against Aramark for discarding food that was place under a hold order." They were issued a warrant and Aramark had to enter a plea "in order for a new license to be issued."

Furthermore, the vast majority of these inspections which defendants failed were failed due to unsanitary practices or conditions as can be seen in all of Exhibit D's reports. It became so severe that they were required to come up with a plan to feed the prison population if the

12

Kitchen were to be shut down by the Health Department. See Exhibit D-4 page 2of2 at paragraph 3 of the Published Comments Section. All of the above ~~facts~~ facts show overwhelming evidence that the Aramark Defendants and Joshua Massi were deliberately Indifferent and acted with a culpable state of mind in knowing of and disregarding a substantial risk of harm to plantiffs Health and safety.

    - Material Facts concerning Defendant Massi :

    • Defendant Massi At all relevant times acted under color of state law as a correctional officer, specifically as a "Prison Supervisor II - Kitchen supervisor"

    • Defendant Massi was aware of prison wide food poisoning outbreaks.

    • Defendant Massi participated in multiple Inspections which yielded negative results

    See Exhibit E "The County of Chester Job Description" for a full description of Massi's duties as the Kitchen Supervisor and Exhibit F "Defendant Joshua Massi's Answers To plantiff's Request For Interrogatories" at page 3 where he concedes the above material facts. The rest of the material facts outlined in Exhibit A, to Plantiffs Summary Judgmen Motion "Plantiff's list of Undisputed Material Facts" are undisputedly supported by evidence as seen in the foregoing Exhibits

    - Material Facts concerning the Aramark Defendant's :

13

• Plantiff Incorporates paragraphs 5, 6, 7, 8, 9, 10 11, and 12 of Exhibit A of his Motion For Summary Judgment "Plantiffs list of undisputed Material Facts." Plantiffs Exhibit A, C-1 through C-4, D-2, D-3, D-4, D-5, D-6, D-7 and D-8 all support the fact that these are undisputed by defendants.

Furthermore, the fact that both Defendant Massi and the Aramark defendants maintained practices and procedures which directly caused the constitutional violation at issue herein and caused plantiff physical and emotional injury is material and cannot be disputed. This is evidenced by Exhibit's D-1 through 9.

There is also an issue with lack of training and supervision and managiral skills. As seen in Exhibit D-2 page 2 of 3 in the "observation and corrective Actions" at paragraph #1 It States "The person in charge does not have adequate knowledge of food safety in this facility..." and on page 3 of 3 Published comments paragraph 3 states "Better managerial control is needed in this Kitchen." On page 2 of 2 in Exhibit D-4 in the Published comments at paragraph 2 Sentence 3 It states all aramark staff "are attending or have attended a Food manager class." "Mr. Massi needs to renew his certification as well—he oversees staff and some staff training in the kitchen."

Despite the Health Department sanctioning and

141

taking actions to ensure better practices, training, and supervision such as Food safety and managerial classes as seen in Exhibit D-4 discussed above, In Exhibit D-6 on page 2 of 2 in the Published Comments paragraph 2 it states "Lack of training and supervision remain an issue." and in paragraph 3 it states "poor food handling and hot holding remain issues."

Exhibit E outlines Massi's duties at the kitchen Supervisor. Page 1 paragraph titled "Summary/Main purpose of Job" Summarizes his duties. The next section "Essential duties, Task and Accountabilities" list 15 bullet points. #1 holds that it is his duty to Maintain security and order in the work place "by administering all rules, regulations, policies and procedure to inmates, staff and approved outside contractors." #2 that he is to provide supervision "in all aspects of the food service department." #6 that he is to provide and conduct training, direction and instruction of contract staff and or inmates "in all aspects of food service." This document shows he was in charge of training and supervising inmate, staff, and to an extent the Aramark employees.

As to Aramark Defendant(s) although plantiff does not have a specific Job description It is well established they work with the prison as an outside contractor whom provides food services and employees to the prison. Thus is can be said that they are in

15

charge of the kitchen as much as Massi and in charge of its employees and constantly allowed these unsanitary and dangerous practices and procedures to continue, despite being fined and even criminally charged. They also failed to properly train and supervise which in turn caused plantiff's injury.

A review of Exhibit D-1 through D-9 show that there was a constant lack of sanitary conditions and safe practices and this caused the conditions plantiff is challenging. In a very severe occasion on 10/02/24 perhaps the most severe instant of food poisoning Aramark attempted to interfere with an investigation into what was causing the illnesses which resulted in criminal charges. The overall conditions of the kitchen as seen in Exhibit D-1 through 9 support plantiffs claims. It cannot be disputed.

In their Answers with Affirmative defenses (Exhibit B and B-1) these defendants deny all of plantiffs claims which are now supported by evidence. They claim they did not violate plantiffs rights or did anything that caused injury to him. Further that plantiff some how caused his own injuries or "assumed the risk" of the injuries and apparently they are not liable for such. Plantiff was an indigent inmate and could not afford to survive on very, extremeley expensive commissary food

16

and had no other option but to eat the very food that these defendants stored, prepared, cooked, and served under recklessly unsanitary and unsafe conditions. Even knowing that he will likely become sick as the result of eating these meals he had no option but to eat them. The only other option he had was to starve. This created an emotional and physical torture.

Defendants cannot cite any evidence other than perhaps their own sworn statements to counter the material facts identified in this motion and brief in support thereof. "When the moving party has the burden of proof at trial that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).

"With respect to an issue on which the non-moving party bears the burden of proof... the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 US at 325.

Once the moving party has satisfied its

initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exist. Jersey Cent. Power & Light Co. V. Lacey Township, 772 F2d 1103, 1109 (3d cir. 1985). The party opposing the motion for Summary Judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 US at 248; Siegel Transfer, Inc. V. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d cir. 1995) "Unsupported allegations... and pleadings are insufficient to repel Summary Judgment." Schoch V. First Fed. Bancorporation, 912 F. 2d 654, 657 (3d cir 1990); see also Fed. R. Civ. P 56 (e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial," Gleason V. Norwest Mortg. Inc., 243 F.3d 130, 138 (3d cir. 2001)

If the evidence Plantiff has set forth herein is viewed in light most favorable to Defendants, any reasonable jury can find that the Defendants have failed to establish a genuine issue for trial.

A party opposing Summary Judgment must do more than Just rest upon mere allegations, general denials, or

18

vague statements. <u>Saldana v. Kmart corp.</u>, 260 F.3d 228, 232, 43 V.I. 361 (3d cir. 2001) To successfully oppose entry of summary judgment, the non-moving party may not simply rest on its pleadings, but must demonstrate, through the submission of admissible evidence that a factual dispute remains for trial. <u>In Re Bentivegna</u>, 597 B.R. 261, 263-64 (Bankr. E.D. Pa 2019) (citing <u>Celotex</u>, 477 US 317, 324.

There is allegations which plantiff was not able to gain evidence in support of. This was however, a direct result of defendants constant failure to comply with discovery rules. These allegations are those of the meats and/or food products being labeled not for human consumption and with cancer warnings. As seen in Exhibit G "Plantiffs second Attempt to obtain Interrogatories pursuant to Fed.R.civ.P 33 From Josva Massi," at page 2 paragraph 6; and Exhibit G-1 "Plantiffs second set of Request for production of Documents ▬▬▬ pursuant to Fed.R.civ.p 34" Directed to the Aramark Defendants at page 1 paragraph 2 and page 2 at paragraph 3; and also Exhibit G-2 "Plantiffs second set of Request for Interrogatories pursuant to Fed.R.civ.P. 33" directed to the Aramark defendants at page 1 paragraph 1 and 2, Plantiff has pursued evidence to support these allegations as seen in Exhibit G-3. These were served on January 13 2026 and January 15 2026.

19

Defendants never responded to no surprise at all, as they have continuosly done. Discovery closed Febuary 23 2026 and to seen a Motion to Compel once again, will be futile and a burden and only cause delays. This repeated refusal to comply with the rules can only be inteperted as Defendants intentionally refusing to provide Plantiff with evidence that is unfavorable to their defense.

The Aramark Defendants in providing food services and employees to the Chester County prison has failed to properly train and supervise its employees and has shown to be deliberately indifferent to the continous practices and procedures and/or customs which at the relevant times caused Plantiff's injuries. Therefore they must be held liable and cannot present any genuine dispute of material facts as to this assertion.

The Supreme court has held that in limited circumstances "an allegation of 'failure to train' can be the basis for liability under Section 1983" where a "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought as a city "policy or custom." City of Canton, ohio v. Harris, 489 US 378, 387, 389, 109 S.Ct. 1197, 103

20

L.Ed 2d 412 (1989).

As to Plantiffs Injuries, his verified Amended Complaint is evidence of such injuries. Courts have noted that verified complaints can be considered as affidavits in analyzing motions for summary judgment. See Porter V. Pa Dept of Corr., 974 F.3d 431, 443 (3d Cir. 2020); See also Jackson V. Armel 2020 US Dist Lexis 76861, 2020 WL 2104748, at *5 (W.D. Pa May 1 2020) (citing Reese v. Sparks, 760 F.2d 64, 67 (3d cir. 1985)). (treating verified complaint, as an affidavit on summary judgment motion).

Exhibits C-1 through 4 also support the claims of plantiffs injuries and as well as the claim that the medical department refused to see inmates for complaints of the illnesses caused by the foods. Exhibit D-4 and D-5 in the published comments sections show that there in fact were prison wide food poison "outbreaks" which in turn support the allegations as to plantiffs injuries.

## IV. Conclusion And Prayer For Relief

In conclusion, Defendants cannot show through any admissible evidence that there is any genuine disputes as to any material facts and therefore Plantiff is entitled to judgment as a matter of law where he has presented a supported motion for

Summary Judgment. Whereas this Honorable court must grant Summary Judgment as to this entire case.

By

Wilson J. Velez

Date: 3/02/2026   Wilson J Velez-Santiago

00996788

James T Vaughn

1181 Paddock Road

Smyrna DE 19977

22

Exhibit A

Declaration of Authentication
In support of Exhibit A

I Wilson J Velez-Santiago do hereby declare under the pains and penalties of perjury that the enclosed is a true and correct copy of Plantiff's Amended complaint as evidence by the record and it is verified and admissible evidence.

Wilson J. Velez So
Wilson J Velez-Santiago

Date: 3/07/2026

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

Wilson Junior Velez-Santiago

*Plaintiff(s)*

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Please See Attached

*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **25-563**

*(to be filled in by the Clerk's Office)*

(Amended Complaint)

Jury Trial Demanded

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

The Clerk will not file a civil complaint unless the person seeking relief pays the entire filing fee (currently $350) and an administrative fee (currently $50) in advance, or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915. A prisoner who seeks to proceed in forma pauperis must submit to the Clerk (1) a completed affidavit of poverty and (2) a copy of the trust fund account statement for the prisoner for the six month period immediately preceding the filing of the complaint, obtained from and certified as correct by the appropriate official of each prison at which the prisoner is or was confined for the preceding six months. See 28 U.S.C. § 1915(a)(2).

If the Judge enters an order granting a prisoner's application to proceed in forma pauperis, then the order will assess the filing fee (currently $350) against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct an initial partial filing fee equal to 20% of the greater of the average monthly deposits to the prison account or the average monthly balance in the prison account for the six-month period immediately preceding the filing of the complaint, as well as monthly installment payments equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00, until the entire filing fee has been paid. See 28 U.S.C. § 1915(b). A prisoner who is granted leave to proceed in forma pauperis is obligated to pay the entire filing fee regardless of the outcome of the proceeding, and is not entitled to the return of any payments made toward the fee.

Page 1 of 11

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

I.  **The Parties to This Complaint**

A.  **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name  (1)Wilson Junior Velez-Santiago

All other names by which
you have been known:

ID Number  0070317

Current Institution  Chester County Prison

Address  501 South Wawaset Road
West Chester _____ PA _____ 19382
_____ City _____ State _____ Zip Code

B.  **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name  Aramark correctional Services

Job or Title (if known)  Food Provider

Shield Number  N/A

Employer

Address  501 S. Wawaset Road
West Chester _____ PA _____ 19382
_____ City _____ State _____ Zip Code

☒ Individual capacity   ☐ Official capacity

Defendant No. 2

Name  Prison Supervisor (Aramark) John Doe

Job or Title (if known)  In-House Kitchen Supervisor

Shield Number  N/A

Employer  Aramark correctional Services

Address  501 South Wawaset Road
West Chester _____ PA _____ 19382
_____ City _____ State _____ Zip Code

☒ Individual capacity   ☐ Official capacity

Page 2 of 11

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

Defendant No. 3
    Name                    J. Massi
    Job or Title (if known)    Kitchen Supervisor /correctional officer
    Shield Number         ~~corrections~~ 1056
    Employer             Chester County Prison
    Address               501 South Wawaset Road
                         West-chester       PA       19382
                                City          State         Zip Code

[X] Individual capacity     [ ] Official capacity

Defendant No. 4
    Name
    Job or Title (if known)
    Shield Number
    Employer
    Address

                                City          State         Zip Code

[X] Individual capacity     [ ] Official capacity

II.    **Basis for Jurisdiction**

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against (check all that apply):

    [ ] Federal officials (a *Bivens* claim)

    [X] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Fourteenth Amendment Due Process of a Pre Trial Detainee

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

_N/A_

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

_At all relevant times all defendants were working for or with the county Prison._

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☒    Pretrial detainee

☐    Civilly committed detainee

☐    Immigration detainee

☐    Convicted and sentenced state prisoner

☐    Convicted and sentenced federal prisoner

☐    Other *(explain)* _____

## IV.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

_N/A_

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

_Chester County Prison_

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

C.    What date and approximate time did the events giving rise to your claim(s) occur?

Between April 22, 2024 to present Day.

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Please see Attached.

V.    **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Continuous Risk of harm to my Future health/Emotional Distress constant Diarrhea, severe stomach Pains, Nausea, occassional Vomitting (food poisoning)

VI.    **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

$150,000 In compensatory Damages for my injuries and violation of rights $200,000 For the Reckless disregard to my rights, health, and safety by all Defendant's.

Statement of Claim-Section IV (D) page 5 of 11
Facts underlying claims-

Since April 22, 2024 I have been held as a pretrial Detainee at the Chester County Prison. Since such date I have experienced countless stomach illnesses which cause severe and sometimes extreme stomach pains, chest pains, nuasea, constant diarreah, and the occassional vomiting. This has been an ongoing prison wide condition resulting from the prison food provided by Aramark correctional services and prepared by and under the supervision of the Aramark in house kitchen supervisor and the prison kitchen supervisor J. Massi. These stomach illnesses have become part of the normal every day routine at the prison. So much so that any medical complaints go ignored.

I have complained numerous times via a sick call request forms for months which have gone unanswered. I have also complained verbally during verbal sick call rounds while in the restricted housing unit. These complaints have all gone unanswered. Not one time was I ever seen by medical for stomach illness or any symptoms. At one point in time I had to lie about having chest pains to be seen by medical. It is widely known by inmates that chest pains are usually dismissed here at the prison as gas build up and they give you peptobismol or Tums for it. Being so I lied about chest pains just to be seen and receive peptobismol to help aliviate my stomach pains and related symptoms. At some point

thereafter, however, I did experience severe acid and chest irritation which I was seen for and again given tums. But again when complaining of Stomach pains, diarreah, nausea and all these symptoms I was ignored. At one point a nurse (Melissa) brushed my complaint off by stating "It's just the food you'll be fine tomorrow." This seems to be the norm in the prison. Everyone knows the food causes stomach viruses and simply choose to ignore the problem. From the Medical Department to the kitchen staff and supervisors.

These toxic foods have caused prison wide food poisoning since my arrival. The prison has issued surveys to try to locate the exact food source but nothing is actually done. At times the surveys do not get distributed by the gaurds and just end up in the trash. On one occasion an Aramark staff member was fired for leaving food out overnight and serving it the next day causing a prison wide food poison outbreak. That was the cause that time, however, it has been going on before and after that incident. The food products that cause these symptoms vary from breakfast oatmeals and creamed weats to side salads, vegetables, potatoes, noodles and at times the rice. The products that cause the more severe and extreme illnesses ~~however~~ however, are the meat products. These products have been known to come in bloody containers labeled "not for human consumption" and some with caution warnings saying that the products

may cause cancer.

These food products have caused me stomach viruses so severe that at times I have to curl up in pain with tears in my eyes. I can never fully recover because the food is the source and diarreah can last days and as much as 8 times in one day. Despite knowing what the likely result will be, I have no option but to eat the food and accept and even expect the pain and sickness that will come with it. The kitchen supervisors and Aramark receive constant complaints of these conditions and they issue prison wide surveys but nothing ever changes. They continue to prepare and serve the exact same foods daily and weekly knowing the health risk and harm they are causing to the inmates who are forced to eat them. During this time period the kitchen has been said to even fail a health and sanitation inspection. The effects of the foods, mainly the meats come almost instantly and at times I must rush to the toilet. To date (April 20) a year later now 2025 my body has grown more use to the food and the pains are not as severe or extreme but nonetheless I still experience the exact same symptoms and sicknesses. This has been a constant everyday, every other day, or every few days since my arrival in April of 2024.

These toxic foods supplied and prepared by defendants have caused a constant torture to my digestive system and they even put me at future risk to develope

3

Cancer. A potentially life ending disease. The products which cause the most severe and extreme illnesses are labeled Not for human consumption. Clearly the company whom packages and distributes the products are warning the consumer that the product is not fit for the human body and human consumption. The defendants have ignored these warnings and been feeding the prison population these products for years and the consequences are being suffered by the inmates like myself. On top of that I cannot even receive medical attention for the sickness the toxic foods cause me. Defendants actions are feckless and in complete disregard for human safety and well being. I have been seen by medical for other unrelated sick call complaints, so it appears that my sick call complaints about stomach sickness are either ignored or not filed by the nurses.

4

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Chester County Prison

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☐ No

☒ Do not know

If yes, which claim(s)?

Page 6 of 11

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.    If you did file a grievance:

1.  Where did you file the grievance?

Chester County Prison

2.  What did you claim in your grievance?

That Aramark Workers, Prison-Kitchen Supervisor and all relevant defendant's are violating my rights due to the food conditions causing my Injuries, and denial of medical treatment.

3.  What was the result, if any?

No Response

4.  What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (Describe all efforts to appeal to the highest level of the grievance process.)

wrote Follow up request slips and filed Second grievance with no response. Talked to Lt, Diorio.

Page 7 of 11

F.   If you did not file a grievance:

　　　1.   If there are any reasons why you did not file a grievance, state them here:

_____ N/A _____

　　　2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

_____ N/A _____

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_____ See Attached _____
(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)

**VIII.  Previous Lawsuits**

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☒ Yes

☐ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

_Eastern District of Pennsylvania on about March 21, 2019_ _____

Page 8 of 11

Section VII.(G) Grievance Documets.

The Attached Exhibits are grievance attempts and Request to follow up which went unanswered.
(2) Grievances 1.) May 23rd 2024, 2.) September 25, 2024.
(2) Request To Grievance Officer
1.) June 11, 2024, 2.) June 29, 24

**CHESTER COUNTY PRISON**

**INMATE REQUEST**

**INSTRUCTIONS: Complete items 1-6. Careful Preparation of your request will enable a prompt disposition.**

| 1.To: (Name of Staff Member) Grievance Officer | 2. Date: 6-29-24 |
|---|---|
| 3. By: Wilson Velez | 4: Co # 70317 |
| 5. Cell # R.23. | |

**6. Subject: State briefly, but completely the reason for this request.**

I am again writing about my May 23'd grievance and 6-11-24 request about the status of that grievance. I have yet to receive any response to neither of them. could you please get back to me as nothing is being done about this issue and I still am suffering the same issues.

**Remarks, Comments & Recommendations from Block Officer**

Officers Signature                          Date:

Disposition:

Staff Member:                          Date:

# Chester County Prison
## Official Inmate Grievance Form

Grievance Number: **C.C.P.**

Date: 9·25·24

**To:** Grievance Officer:

**From: Inmate :**

**Instructions:**

1. Complete and sign the form. Submit to complaint officer. **Write legible**.

2. This form is to be used to file a formal complaint against the institution. **Do not**
   **use this form to request services** or to review disciplinary proceedings.

## Complaint:

I am writing this second grievance about the Toxic food Aramark is serving the prison. My original complaint was on May 23rd 2024 where I complained of this issue and of the denial of medical treatment by Nurse Melissa and PrimeCare Medical. I never received a response. Subsequently I wrote to request inquiring of the status of the grievance which went unresponded. Since May 23rd I have been suffering the same exact issues. The food is causing me severe and extreme stomach pain, diarreah, nausea, and on one occassion I actually threw my food up. I have submitted sick calls with no response. This is a prison wide issue and nothing is being done about it. I have written The Warden, Director Morroney and this second grievance. but yet the issue is not being addressed. It's simply being ignored. Prison Kitchen workers have first hand knowledge that the

_Inmates Signature_

_Date Received and Complaint Officers Signature_

## Chester County Prison
## Official Inmate Grievance Form

Grievance Number: **C.C.P.**

Date: 5·23·25

To: Grievance Officer:

From: Inmate : Wilson J. Velez-Santiago

**Instructions:**

    1. Complete and sign the form. Submit to complaint officer. <u>**Write legible**</u>.

    2. This form is to be used to file a formal complaint against the institution. <u>**Do not**</u>

       <u>use this form to request services</u> or to review disciplinary proceedings.

## Complaint:

I am writing this grievance for the violation of my Fourteenth Amendment rights as a pre-trial detainee. I arrived at the prison on about April 22, 2024 and since then been experiencing at times extreme pain to my stomach, Nausea, severe diarreah from the prison food. This is a constant thing when eating Breakfast, Lunch, and dinner. It's at it's worse when I eat the Meat products. Other's around me all have the same symptoms. On about May 17 2024, I complained to Nurse Melissa about the issue during "Seg Rounds" and she blaintenly refused to put me down for sick call saying that it is just the food "you'll be fine tomorrow." This seem's to be the norm because I always complain on sick calls about it and never receive treatment or am called for sick calls. Apparently my sick call's dont get filed or are just simply ignored. PrimeCare is violating my right to medical treatment In doing so. Aramark services, Kitchen Supervisor J. Massi all must know of this issue

Wilson Vele
**Inmates Signature**

**Date Received and Complaint Officers Signature**

**CHESTER COUNTY PRISON INMATE REQUEST**

**INSTRUCTIONS: Complete items 1-6. Careful Preparation of your request will enable a prompt disposition.**

| 1. To: (Name of Staff Member) Grievance Officer | 2. Date: 6·11·24 |
|---|---|
| 3. By: Wilson Velez | 4: Co # 70317 |
| 5. Cell # R-23 | |

**6. Subject: State briefly, but completely the reason for this request.**

I am writing in regards to my May 23 Grievance about the food poisoning and denial of Medical treatment. It's been almost 30 days and I have not received a response nor grievance Copy with a number letting me know it was filed. Please get back to me as soon as you can on the status of this grievance as it is urgent and an ongoing issue.
Thank you

**Remarks, Comments & Recommendations from Block Officer**

| Officers Signature | Date: |
|---|---|

| Disposition: | |
|---|---|

| Staff Member: | Date: |
|---|---|

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights)

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

Plaintiff(s)    _____

Defendant(s)    _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.  Docket or index number

_____

4.  Name of Judge assigned to your case

_____

5.  Approximate date of filing lawsuit

_____

6.  Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.    _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

[X] Yes

[ ] No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
      Plaintiff(s) Wilson Velez  (see attached for others)
      Defendant(s) Sgt. Yancill and Taylor, C.O. Norman Wilson, Dr. Amber Oneill.

2.    Court *(if federal court, name the district; if state court, name the county and State)*

      District Court For E.D.Pa

3.    Docket or index number

      unkown

4.    Name of Judge assigned to your case

      Nitza I Quinonez Aledandro

5.    Approximate date of filing lawsuit

      Between April and September 2019

6.    Is the case still pending?

      [ ] Yes

      [X] No

      If no, give the approximate date of disposition    unknown

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

      Out of court settlement

Page 10 of 11

Section VIII. Previous Lawsuits Subsection D. -Continued (Page 10 of 11)

1) 1. Parties to previous lawsuit

Plantiff(S)    Wilson Velez

Defendant(S)   Dion Hunter

2. Court

District CourtHouse For The Eastern District of Pennsylvania

3. Docket Number

unknown

4. Name of Judge assigned to your case

Nitza I. Quiñones Alejandro

5. Approximate date of filing

Between January 2020 and December of 2021

6. Is the case Still pending?

☐ Yes ☒ NO

if no, give the approximate date of disposition unknown

7. What was the result of the case?

Out of Court Settlement. After the open or closure of Discovery.

2) 1. Parties to previous lawsuits

Plantiff(S)   Wilson Velez

Defendant(S)  Martha Champlin

2. Court - Court for The Eastern District of Pennsylvania

3. Docket Number - 18-1324

4.1 Name of Judge assigned to your case - Nitza I. Quiñones Alejandro

5 Aproximate date of filing - Between April and July 2018

6. Is the case Still pending ☐ Yes ☒ NO, if no, approximate date of disposition 3/21/19

7. What was the result of case? Dismissed for Failure to State a Claim, no appeal.

E.D.Pa, AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    4·22·2025

Signature of Plaintiff    Wilson J. Velez Santiago
Printed Name of Plaintiff    Wilson J. Velez Santiago
Prison Identification #    0070317
Prison Address    501 S. Wawaset Road
West Chester _____ PA ___ 19382
          City          State      Zip Code

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____
Printed Name of Attorney    _____
Bar Number    _____
Name of Law Firm    _____
Address    _____
       City       State      Zip Code
Telephone Number    _____
E-mail Address    _____

Verification

In Re: Velez-Santiago V. Aramark Correctional Services et als #25-563

This is to verify that the Statements and allegations made within the foregoing Amended Complaint Signed and Dated April 22 2025 are True and correct to the best of my Knowledge, information, and belief. This Verification is made Subject to the pains and penalties of Perjury.

April 22 2025

Wilson J. Velez D.
Wilson J Velez-Santiago
Pro Se Plantiff
0070317
Chester County Prison
West Chester PA 19382

Exhibit B

Declaration of Authentication
In support of Exhibit B and
B-1

I Wilson J. Velez-Santiago do hereby declare
that these above captioned Exhibits enclosed herein are
true and correct copies of Defendants answers to
Exhibit A "Amended Complaint" as is evidenced by the
record and are admissible evidence. This declaration is
subject to the pains and penalties of perjury.

Wilson J Velez Lo

Date: 3/02/2026    Wilson J Velez-Santiago

Case 2:25-cv-00563-NIQA    Document 13    Filed 06/30/25    Page 1 of 7

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| WILSON JUNIOR VELEZ-SANTIAGO | : | Civil Action No. 25-cv-00563 |
|  | : |  |
| Plaintiff | : |  |
| v. | : |  |
|  | : |  |
| ARAMARK CORRECTIONAL SERVICES, et al. | : |  |
|  | : |  |
| Defendants. | : |  |

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS TO
PLAINTIFF'S AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES**

Defendant Joshua Massi, a former Corrections Officer of the Chester County Prison, by and through his attorney, Lamb McErlane PC, hereby submits this Answer with Affirmative Defenses to the Amended Complaint [ECF 7] of Plaintiff, Wilson Junior Velez-Santiago, and more specifically, alleges as follows:[1]

**FIRST AFFIRMATIVE DEFENSE**

I.    **PARTIES**

A.    Admitted.

B.    Denied as stated. It is unclear who Plaintiff has named as Defendants, but the allegations appear to be directed to the Prison's food service and the Amended Complaint alleges conditions relating to the food served at the Chester County Prison. Defendant Joshua Massi is a former Correctional Officer who was assigned to the kitchen at the Chester County Prison.

---

[1] Plaintiff's Amended Complaint does not contain numbered paragraphs. Instead, the Amended Complaint is a standard *pro se* prisoner complaint form. The instant Answer with Affirmative Defenses corresponds to the heading paragraphs contained in Plaintiff's Amended Complaint.

## II.     BASIS FOR JURISDICTION

A.     Denied.  It is denied that the County engaged in any conduct which constitutes a deprivation of rights, privileged, or immunities.

B.     Denied.  It is denied that Joshua Massi engaged in any conduct which constitutes a Fourth Amendment Due Process violation.

C.     Denied as Plaintiff has not completed this section.

D.     Admitted in part Denied in part.  Joshua Massi was employed by the Chester County Prison.  The remaining allegations are denied.

## III.    PRISONER STATUS

A.     Denied.

## IV.     STATEMENT OF CLAIM

A.     Denied as Plaintiff has not completed this section.

B.     Denied.

C.     Denied.

D.     (Attachment). Denied in its entirety.

## V.      INJURIES

A.     Denied.

## VI.     RELIEF

A.     Denied.

## VII.    EXHAUSTION OF ADMINISTRATIVE REMEDIES ADMINISTRATIVE PROCESS

A.     Denied.

B.     Admitted only that the Chester County Prison has a grievance procedure.

C.     Denied. Joshua Massi is unaware what Plaintiff knows or does not know.

2

D.    Denied.

E.    Denied.

F.    Denied as stated.  It is admitted only that Plaintiff failed to properly exhaust his administrative remedies.

G.    Denied.

## VIII.    PREVIOUS LAWSUITS

A.    Denied.

B.    Denied.

C.    Denied.

D.    Denied.

## IX.    CERTIFICATION AND CLOSING

A.    Denied.

B.    Denied.

**WHEREFORE,** the Defendant Joshua Massi respectfully requests that judgment be entered in his favor and against Plaintiff Wilson Junior Velez-Santiago and that Plaintiff's Amended Complaint be dismissed.

### SECOND AFFIRMATIVE DEFENSE

1.    The Joshua Massi asserts the defenses of absolute, governmental, official, good faith and/or qualified immunity.

### THIRD AFFIRMATIVE DEFENSE

2.    Plaintiff failed to exhaust his administrative remedies.

3

## FOURTH AFFIRMATIVE DEFENSE

3.      The conduct of Joshua Massi did not rise to the level of reckless or deliberate indifference or conduct that shocks the conscience; mere negligent or careless conduct on the part of a defendant are insufficient to maintain a cause of action.

## FIFTH AFFIRMATIVE DEFENSE

4.      Joshua Massi's conduct was not objectively unreasonable.

## SIXTH AFFIRMATIVE DEFENSE

5.      Plaintiff has failed to allege any constitutional violation.

## SEVENTH AFFIRMATIVE DEFENSE

6.      Joshua Massi's conduct was justified and appropriate.

## EIGHTH AFFIRMATIVE DEFENSE

7.      Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against Joshua Massi.

## NINTH AFFIRMATIVE DEFENSE

8.      Plaintiff's alleged injuries, which are denied by Joshua Massi, were the result of some other event over which the Joshua Massi had no authority or control

## TENTH AFFIRMATIVE DEFENSE

9.      Plaintiff failed to mitigate his own damages, if any, and assumed the risk of his conduct.

## ELEVENTH AFFIRMATIVE DEFENSE

10.     At all times relevant hereto, Joshua Massi reasonably believed that his actions were lawful and reasonable and that it did not violate any clearly established law at all times concerned with this litigation.

4

11.     Joshua Massi acted in a matter that was proper, reasonable, and lawful and in the exercise of good faith, and, as such, enjoy the right to qualified immunity as articulated in *Michelle v. Forsyth,* 472 U.S. 511 (1985).

**TWELFTH AFFIRMATIVE DEFENSE**

12.     Plaintiff was afforded all constitutional rights and protections at all times material to the allegations and incidents set forth in Plaintiff's Amended Complaint.

**THIRTEENTH AFFIRMATIVE DEFENSE**

13.     Joshua Massi did not willfully or intentionally commit any wrongful act causing injury or damage to Plaintiff and in the absence of willful conduct, there can be no liability on the part of the Joshua Massi to the Plaintiff.

**FOURTEENTH AFFIRMATIVE DEFENSE**

14.     Joshua Massi exercised reasonable care under the circumstances of this case and acted justifiably.

**FIFTEENTH AFFIRMATIVE DEFENSE**

15.     All claims against Joshua Massi are barred by application of the doctrine of qualified immunity as articulated in *Harlow v. Fitzgerald,* 457 U.S. 800 (1982) and subsequent decisions

**SIXTEENTH AFFIRMATIVE DEFENSE**

16.     Joshua Massi asserts that he did not violate clearly established law and at all times concerned with this litigation, acted in a manner which was proper, reasonable and lawful, and in the exercise of good faith, and, as such, enjoy not only the right to immunity but also the right not to go to trial.

5

Case 2:25-cv-00563-NIQA   Document 13   Filed 06/30/25   Page 6 of 7

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.     Plaintiff's claims for punitive damages are barred by state and federal law in accordance with the *City of Newport v. Fact Concerts, Inc.*, 101 S.Ct. 2748 (1987).

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.     Plaintiff has received regular treatment for any medical needs.

**WHEREFORE,** Defendant Joshua Massi respectfully requests that judgment be entered in their favor and against Plaintiff, Wilson Junior Velez-Santiago, and that Plaintiff's Amended Complaint be dismissed.

                                                    **LAMB McERLANE PC**

Date:   June 30, 2025                    By:   */s/ Guy A. Donatelli*
                                                    Guy A. Donatelli
                                                    Attorney I.D. Nos. 44205
                                                    24 East Market Street
                                                    P.O. Box 565
                                                    West Chester, PA 19381-0565
                                                    (610) 430-8000
                                                    gdonatelli@lambmcerlane.com

                                                    *Attorney for Defendant Joshua Massi*

6

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILSON JUNIOR VELEZ-SANTIAGO | : | Civil Action No. 25-cv-00563 |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| ARAMARK CORRECTIONAL SERVICES, et al. | : | |
| | : | |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing *Joshua Massi's Answer to Plaintiff's Amended Complaint with Affirmative Defenses* has been served upon the following, by the following means and on the date stated below:

| **Name** | **Means of Service** | **Date of Service** |
|---|---|---|
| Wilson Junior Velez-Santiago #0070317 Chester County Prison 501 S. Wawaset Road West Chester, PA  19382 | First Class Mail | June 30, 2025 |

**LAMB McERLANE PC**

Date:   June 30, 2025

By:   */s/ Guy A. Donatelli*
Guy A. Donatelli
Attorney I.D. Nos. 44205
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565
(610) 430-8000
gdonatelli@lambmcerlane.com

*Attorney for Joshua Massi*

Exhibit B-1

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

WILSON JUNIOR VELEZ-SANTIAGO     :
                         :
       Plaintiff,                :
                         :
       v.                    :
                         :        No. 25-cv-00563
ARAMARK CORRECTIONAL SERVICES,    :
et al.                          :
                         :
       Defendants          :

---

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT, ARAMARK
CORRECTIONAL SERVICES TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Aramark Correctional Services, by and through its attorneys at Bennett,
Bricklin & Saltzburg, LLC, hereby submits this Answer with Affirmative Defenses to the
Amended Complaint [ECF 7] of Plaintiff, Wilson Junior Velez-Santiago, and more specifically,
alleges as follows:[1]

I.     **PARTIES**

      A.     Admitted, upon information and belief.

      B.     Admitted in part and denied in part. It is admitted only that based on the face of
the Amended Complaint, Plaintiff has identified the entity "Aramark Correctional Services" as a
Defendant in this case. Answering Defendant has also identified unnamed "John Doe" Defendant,
a "kitchen supervisor." To the extent that Plaintiff makes allegations against Defendants other
than Answering Defendant, they are denied.

II.     **BASIS FOR JURISDICTION**

---

[1] Plaintiff's Amended Complaint does not contain numbered paragraphs. Therefore, Answering
Defendant's Answer corresponds to the Sections of the Amended Complaint, which is a standard *pro se*
Prisoner's Rights form Complaint.

A.      Denied. This paragraph of Plaintiff's Amended Complaint is denied as a conclusion of law to which no response is required. By way of further response, it is denied that Answering Defendant engaged in any conduct which constitutes a deprivation of Plaintiff's rights, privileged, or immunities.

B.      Denied. This paragraph of Plaintiff's Amended Complaint is denied as a conclusion of law to which no response is required. By way of further response, it is denied that Answering Defendant violated Plaintiff's constitutional rights.

C.      Denied as a legal conclusion to which no response is required.

D.      Denied as a legal conclusion to which no response is required. By way of further response, Answering Defendant Aramark Correctional Services provides food services to the Chester County Prison.

## III.   PRISONER STATUS

A.      Answering Defendant lacks sufficient factual knowledge to formulate a response to this section at this time, and therefore, denies same. To the extent that this section calls for a legal conclusion, it is denied.

## IV.   STATEMENT OF CLAIM

A.      Denied in that Plaintiff has not completed this section.

B.      Denied.

C.      Denied.

D.      Answering Defendant denies the facts underlying Plaintiff's claim as set forth in the attachment to the Amended Complaint.

## V.   INJURIES

A.      Denied.

## VI.   RELIEF

A.      Denied.

## VII.   EXHAUSTION OF ADMINISTRATIVE REMEDIES ADMINISTRATIVE PROCESS[2]

A.   Denied.

B.   Admitted only that the Chester County Prison has a grievance procedure. The remaining allegations are denied in that Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments contained in this section of Plaintiff's Amended Complaint, denies same, and demands strict proof thereof at the time of trial.

C.   Admitted only that the Chester County Prison has a grievance procedure. The remaining allegations are denied in that Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments contained in this section of Plaintiff's Amended Complaint, denies same, and demands strict proof thereof at the time of trial.

D.   Denied. Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments contained in this section of Plaintiff's Amended Complaint, denies same, and demands strict proof thereof at the time of trial.

E.   Denied. Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments contained in this section of Plaintiff's Amended Complaint, denies same, and demands strict proof thereof at the time of trial. By way of further response, Answering Defendant affirmatively asserts that Plaintiff failed to exhaust administrative remedies. Answering Defendant further denies all allegations set forth in any grievances filed by Plaintiff.

F.   No response is required in that Plaintiff has indicated that this section is "N/A."

---

[2] The next consecutive page of the *pro se* Amended Complaint appears on electronic page 10.

G.    Answering Defendant denies all allegations set forth in the attachments to the Amended Complaint.

VIII.  **PREVIOUS LAWSUITS**

A.    Denied. Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments contained in this section of Plaintiff's Amended Complaint, denies same, and demands strict proof thereof at the time of trial. Answering Defendant further denies all allegations set forth in any grievances filed by Plaintiff.

B.    Denied. Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments contained in this section of Plaintiff's Amended Complaint, denies same, and demands strict proof thereof at the time of trial. By way of further response, Plaintiff's other lawsuits are public documents which speak for themselves.

C.    Denied. Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments contained in this section of Plaintiff's Amended Complaint, denies same, and demands strict proof thereof at the time of trial. By way of further response, Plaintiff's other lawsuits are public documents which speak for themselves.

D.    Denied. Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments contained in this section of Plaintiff's Amended Complaint, denies same, and demands strict proof thereof at the time of trial. By way of further response, Plaintiff's other lawsuits are public documents which speak for themselves.

## IX.    CERTIFICATION AND CLOSING

A.    Admitted in part and denied in part. It is admitted only that Plaintiff is incarcerated at the Chester County Prison, upon information and belief. The remainder of this section is denied.

B.    Denied in that Plaintiff has not retained an attorney according to the docket.

### AFFIRMATIVE DEFENSES

1.    Plaintiff has failed to exhaust administrative remedies.

2.    Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

3.    Answering Defendant's conduct at all times conformed to the applicable standard of care.

4.    At no times were Plaintiff's constitutional rights violated.

5.    Plaintiff's claims and/or alleged losses may be barred by the Prison Litigation Reform Act.

6.    The Answering Defendant did not act with deliberate indifference towards Plaintiff.

7.    Any negligence or wrongdoing on the part of Answering Defendant, which is expressly denied, is not the factual cause of Plaintiff's injuries.

8.    Plaintiff cannot demonstrate any deficiencies in Answering Defendant's policies, procedures, and practices for the provision of food at the Chester County Prison.

9.    At all relevant times, the practices and procedures of Answering Defendant have been reasonable and appropriate and have insured the protection of all rights, privileged and immunities of the public.

10.    At no time did Answering Defendant act in a bad faith or in a willful, wanton, outrageous, reckless, and/or malicious manner.

11.    Plaintiff did not suffer any injures or damages as a result of any acts or omissions of Answering Defendant.

12.    Plaintiff has not alleged conduct sufficient to constitute a 42 U.S.C. §1983 claim.

13.    The Stature of Limitations bars some or all of Plaintiff's claims.

14.    The doctrine of Estoppel bars Plaintiff's claims.

15.    Plaintiff failed to mitigate his damages

16.    The assumption of the risk doctrine applies to Plaintiff.

17.    Plaintiff's punitive damages claim is barred.

18.    Plaintiff has received regular treatment for any medical needs.

**WHEREFORE,** Defendant, Aramark Correctional Services respectfully requests that judgment be entered in its favor and against Plaintiff, Wilson Junior Velez-Santiago, and that Plaintiff's Amended Complaint be dismissed.

**BENNETT BRICKLIN & SALTZBURG LLC**

By: _____

Michael Dolich
Attorney for Defendant, Ararmark
Correctional Services,
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3462
dolich@bbs-law.com

Date: July 25, 2025

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

WILSON JUNIOR VELEZ-SANTIAGO          :
                                      :
        Plaintiff,                    :
                                      :
    v.                                :
                                      :        No. 25-cv-00563
ARAMARK CORRECTIONAL SERVICES,        :
et al.                                :
                                      :
        Defendants                    :

---

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 25th day of July, 2025, the foregoing Answer

with Affirmative Defenses of Aramark Correctional Services was electronically filed with the

Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of

record, which service satisfies the requirements of the Federal Rules of Civil Procedure.

Guy A. Donatelli
Attorney I.D. Nos. 44205
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565 (610) 430-8000
gdonatelli@lambmcerlane.com
*Attorney for Joshua Massi*

I further certify that a copy of the foregoing has been served on pro se Plaintiff on July

25th, 2025 to the below address via First Class Mail:

Wilson Junior Velez-Santiago
#0070317
Chester County Prison
501 S. Wawaset Road
West Chester, PA 19382

**BENNETT BRICKLIN & SALTZBURG LLC**

By:  _____

Michael Dolich
Attorney for Defendant, Ararmark
Correctional Services,
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3462
dolich@bbs-law.com

Date: July 25, 2025

Declaration Of Authentication
In Support Of Exhibits C-1
through C-41

I Wilson J Velez Santiago do hereby declare under the pains and penalties of perjury that the enclosed Exhibits are true and correct ~~copies~~ copies of Inmate Witnesses sworn Declarations which are made based on their own ~~knowledge~~ knowledge and experiences and as such are admissible evidence at this Summary Judgment Stage. Plantiff obtained these sworn Statements personally from each Witness while confined at the chester County Prison on the dates evidenced on such documents.

Wilson J Velez

Date: 3/07/2026    Wilson J Velez-Santiago

Exhibit C-1

DECLERATION

I Declare Under The Penalty Of Persuey
That The Following Is True And Correct.
I Keyshaun Butcher Have Been At The
Chester County Prison Since 6/10/94. After My Arrival I
Began To Get Sick To My Stomach After Eating The
Prison Food. I Also Have Witnessed The Inmates Around
Me Constatly Get Sick After Eating The Prison Food. As
A Result I Have Chosen To Minimize My Consumption Of
The Prison Food To 1 Meal Per Day And Rely On Commissary
Items To Eat.

8/13/94

Keyshaun Butcher
KEYSHAUN BUTCHER
# 0067419

Exhibit C-2

Declaration

I, Justin Pooler, declare that the following is true and correct. This declaration is made subject to the pains and penalties of perjury.

I have been incarcerated at the Chester County Prison since 9/11/2024. Since such date I've experienced multiple stomach pains, nausea and diarreah after eating the prison food. The meat products usually cause me to have these symptoms. Being so I changed my diet to a no-meat vegan diet. I have also witnessed people on my unit suffer from stomach sickness after eating the prison food. It is not only the meat that get people sick but in my personal experience the meats usually get me sick.

8/8/2025

Justin Pooler

# 0054271

Exhibit C-3

## Decleration

I declare under the pains and penalties of perjury that the following is true and correct to the best of my knowledge, information, and belief. The following statements are based on my personal experiences and observations at the chester county Prison;

I Julio J. Mendoza #0081608 have been incarcerated at the Chester County Prison since April 11, 2024. Since my arrival I have experienced multiple episodes of stomach viruses after eating the prison food. Specifically the meat products have at times caused me severe stomach pains and dirreah, I have witnessed many other inmates suffering from severe symptoms after eating meat served on the prison trays and other foods such as creamed wheats and rice. Although my symptoms are not as severe as others, I have dealt with painful stomach illness after eating prison food specifically meat products. I have heard from kitchen workers that those items are labeled "Not for human consumptions". I have complained by sick call slips of such illness but have never been seen by medical personnel about such sickness and I have witnessed my peers file complaints and never be treated or seen for their stomach illness after eating the prison food.

Date 8/8/25

x _Julio J. Mendoza_
Julio J. Mendoza
ID No: #0081608

Exhibit C-4

DECLARATION

I, Nathaniel Lewis, declare that the following statement is true under the pains and penalties of perjury, that it is based on personal knowledge and experience.

My name is Nathaniel R. Lewis, county number 0073475, and I have been incarcerated at Chester County Prison since June 2023.

Since I have been housed here at Chester County Prison I have suffered from numerous bouts of diarrhea, been afflicted with stomach pains, and nausea. These afflictions were clearly caused by the unsanitary food the Prison has provided.

The meat served to us here left me nauseous and gagging to the point where I changed my diet to a vegetarian meal plan. However, even the lettuce and cabbage we are served is suspect at times and has caused me to be sick. Beans and potatoes are often served under-cooked and meals served cold.

Not only have I experienced weekly stomach pains and diarrhea, but I have witness many other inmates suffer the same afflictions. I remember atime, around February, that everyone in the prison became sick from the same meal. It was later revealed that we all had food

Exhibit D-1

Declaration of Authentication
In Suport of Exhibits D-1
through D-9

I Wilson J velez-Santiago do hereby declare
that the enclosed exhibits are self authenticated
documents produced by defendant Massi and
introduced to the record by him on January 6 2026
as ECF Document 29-3. These Documents are admissible
evidence and are fully relevant at every page. This
declaration is made subject to the pains and penalties
of perjury.

Wilson J velez Sto
Date: 3/02/2026    Wilson J Velez-Santiago



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone: (610) 793-1510

Insp. ID: 1054292
Insp. Date: 4/16/2024
Insp. Reason: Follow-up
No. of Risk Factors: 0
No. of Repeat Risk Factors: 0
Overall Compliance: IN

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS
Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

| | | | |
|---|---|---|---|
| **Supervision** | | 14. Food-contact surfaces: cleaned & sanitized | In |
| 1. Person in charge present, demonstrates knowledge, & performs duties | N/O | 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | N/O |
| **Employee Health** | | **Time/Temperature Controlled for Safety Food (TCS Food)** | |
| 2. Management & food employee knowledge, responsibilities & reporting | N/O | 16. Proper cooking time & temperature | N/O |
| | | 17. Proper reheating procedures for hot holding | N/O |
| 3. Proper use of restriction & exclusion | N/O | 18. Proper cooling time & temperature | In |
| **Good Hygienic Practices** | | 19. Proper hot holding temperature | N/O |
| 4. Proper eating, tasting, drinking, or tobacco use | N/O | 20. Proper cold holding temperature | N/O |
| 5. No discharge from eyes, nose, and mouth | N/O | 21. Proper date marking & disposition | N/O |
| **Preventing Contamination by hands** | | 22. Time as a public health control; procedures & record | N/O |
| 6. Hands clean & properly washed | N/O | **Consumer Advisory** | |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | N/O | 23. Consumer advisory provided for raw or undercooked foods | N/O |
| | | **Highly Susceptible Population** | |
| 8. Adequate handwashing facilities supplied & accessible | In | 24. Pasteurized foods used; prohibited foods not offered | N/O |
| **Approved Source** | | **Chemical** | |
| 9. Food obtained from approved source | N/O | 25. Food additives: approved & properly used | N/O |
| 10. Food received at proper temperature | N/O | 26. Toxic substances properly identified, stored & used | N/O |
| 11. Food in good condition, safe, & unadulterated | N/O | **Conformance with Approved Procedure** | |
| 12. Required records available: shellstock tags, parasite destruction | N/O | 27. Compliance with variance, specialized process, & HACCP plan | N/O |
| **Protection From Contamination** | | | |
| 13. Food separated & protected from cross contamination | In | | |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

| | | | |
|---|---|---|---|
| **Safe Food and Water** | | **Proper Use of Utensils** | |
| 28. Pasteurized eggs used where required | N/O | 41. In-use utensils: properly stored | N/O |
| 29. Water & ice from approved source | N/O | 42. Utensils, equipment & linens: properly stored, dried & handled | N/O |
| 30. Variance obtained for specialized processing methods | N/O | 43. Single-use & single-service articles: properly stored & used | N/O |
| **Food Temperature Control** | | 44. Gloves used properly | N/O |
| 31. Proper cooling methods used; adequate equipment for temperature control | N/O | **Utensils, Equipment and Vending** | |
| 32. Fruits and vegetables cooked properly for hot holding | N/O | 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | N/O |
| 33. Approved thawing methods used | N/O | 46. Warewashing facilities: installed, maintained, & used; test strips | In |
| 34. Thermometer provided & accurate | N/O | 47. Non-food contact surfaces clean | N/O |
| **Food Identification** | | **Physical Facilities** | |
| 35. Food properly labeled; original container | In | 48. Hot & cold water available; adequate pressure | N/O |
| **Prevention of Food Contamination** | | 49. Plumbing installed; proper backflow devices | In |
| 36. Insects, rodents & animals not present | N/O | 50. Sewage & waste water properly disposed | N/O |
| 37. Contamination prevented during food preparation, storage & display | N/O | 51. Toilet facilities: properly constructed, supplied, & cleaned | N/O |
| 38. Personal cleanliness | N/O | 52. Garbage & refuse properly disposed; facilities maintained | N/O |
| 39. Wiping cloths: properly used & stored | N/O | 53. Physical facilities installed, maintained, & clean | In |
| 40. Washing fruit & vegetables | N/O | 54. Adequate ventilation & lighting; designated areas used | N/O |

### FOOD EMPLOYEE CERTIFICATION

| | |
|---|---|
| **Certified Food Manager** | |
| 55. Certification displayed properly and is up-to-date. | N/O |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 4/16/2024 | Rahseedah Johnson (Signature on File) | | 4/17/2024 | Carrie Lane | *Carrie A Lane* | 4/17/2024 | 10:30 AM | 11:15 AM |

4/18/2024 4:12:22 AM

**MASSI-00100**

Page 1 of 2



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

**Food & Institutions Division**

## Retail Food Facility Inspection Report

**Facility:** ARAMARK @ CHESTER COUNTY PRISON **Facility ID:** 92047
**Owner:** ARAMARK @ CHESTER COUNTY PRISON
**Address:** 501 S Wawaset RD
**City/State:** WEST CHESTER PA
**Zip:** 19382  **County:** Chester  **Region:** Territory 7S
**Phone:** (610) 793-1510

**Insp. ID:** 1054292
**Insp. Date:** 4/16/2024
**Insp. Reason:** Follow-up
**No. of Risk Factors:** 0
**No. of Repeat Risk Factors:** 0
**Overall Compliance:** IN

### PUBLISHED COMMENTS

Water issues have been addressed.  Several parts have been replaced in the system and boilers may be upgraded.  Plumbing leaks repaired.

Food containers labeled.
Spice containers were cleaned during inspection.
Cooling procedures - no violations.
Wall tile replaced.

License issued.

4/18/2024 4:12:22 AM

Page 2 of 2

MASSI-00101

Exhibit D-2



**Chester County Health Department**
**Chester County Government Services Center**

**Food & Institutions Division**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone: (610) 793-1510

Insp. ID: 1087094
Insp. Date: 10/8/2024
Insp. Reason: Follow-up
No. of Risk Factors: 8
No. of Repeat Risk Factors: 1
Overall Compliance: OUT

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS
Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

| Supervision | | | | |
|---|---|---|---|---|
| 1. Person in charge present, demonstrates knowledge, & performs duties | Out | 14. Food-contact surfaces: cleaned & sanitized | Out, R |
| **Employee Health** | | 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | N/O |
| 2. Management & food employee knowledge, responsibilities & reporting | N/O | **Time/Temperature Controlled for Safety Food (TCS Food)** | |
| 3. Proper use of restriction & exclusion | N/O | 16. Proper cooking time & temperature | N/O |
| **Good Hygienic Practices** | | 17. Proper reheating procedures for hot holding | Out |
| 4. Proper eating, tasting, drinking, or tobacco use | N/O | 18. Proper cooling time & temperature | N/O |
| 5. No discharge from eyes, nose, and mouth | N/O | 19. Proper hot holding temperature | Out |
| **Preventing Contamination by hands** | | 20. Proper cold holding temperature | Out |
| 6. Hands clean & properly washed | N/O | 21. Proper date marking & disposition | Out |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | N/O | 22. Time as a public health control; procedures & record | N/O |
| | | **Consumer Advisory** | |
| 8. Adequate handwashing facilities supplied & accessible | Out, C | 23. Consumer advisory provided for raw or undercooked foods | N/O |
| **Approved Source** | | **Highly Susceptible Population** | |
| 9. Food obtained from approved source | N/O | 24. Pasteurized foods used; prohibited foods not offered | N/O |
| | | **Chemical** | |
| 10. Food received at proper temperature | N/O | 25. Food additives: approved & properly used | N/O |
| 11. Food in good condition, safe, & unadulterated | N/O | 26. Toxic substances properly identified, stored & used | Out, R |
| 12. Required records available: shellstock tags, parasite destruction | N/O | **Conformance with Approved Procedure** | |
| **Protection From Contamination** | | 27. Compliance with variance, specialized process, & HACCP plan | N/O |
| 13. Food separated & protected from cross contamination | N/O | | |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

| Safe Food and Water | | Proper Use of Utensils | |
|---|---|---|---|
| 28. Pasteurized eggs used where required | N/O | 41. In-use utensils: properly stored | N/O |
| 29. Water & ice from approved source | N/O | 42. Utensils, equipment & linens: properly stored, dried & handled | N/O |
| 30. Variance obtained for specialized processing methods | N/O | 43. Single-use & single-service articles: properly stored & used | N/O |
| **Food Temperature Control** | | 44. Gloves used properly | N/O |
| 31. Proper cooling methods used; adequate equipment for temperature control | N/O | **Utensils, Equipment and Vending** | |
| 32. Fruits and vegetables cooked properly for hot holding | In | 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | N/O |
| 33. Approved thawing methods used | N/O | 46. Warewashing facilities: installed, maintained, & used; test strips | Out, R |
| 34. Thermometer provided & accurate | N/O | 47. Non-food contact surfaces clean | N/O |
| **Food Identification** | | **Physical Facilities** | |
| 35. Food properly labeled; original container | N/O | 48. Hot & cold water available; adequate pressure | N/O |
| **Prevention of Food Contamination** | | 49. Plumbing installed; proper backflow devices | N/O |
| 36. Insects, rodents & animals not present | N/O | 50. Sewage & waste water properly disposed | N/O |
| 37. Contamination prevented during food preparation, storage & display | N/O | 51. Toilet facilities: properly constructed, supplied, & cleaned | N/O |
| 38. Personal cleanliness | N/O | 52. Garbage & refuse properly disposed; facilities maintained | N/O |
| 39. Wiping cloths: properly used & stored | N/O | 53. Physical facilities installed, maintained, & clean | N/O |
| 40. Washing fruit & vegetables | N/O | 54. Adequate ventilation & lighting; designated areas used | N/O |

### FOOD EMPLOYEE CERTIFICATION

| Certified Food Manager | |
|---|---|
| 55. Certification displayed properly and is up-to-date. | N/O |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 10/8/2024 | Brian Holt (Signature on File) | | 10/9/2024 | Carrie Lane | Carrie A Lane | 10/8/2024 | 8:00 AM | 11:15 AM |

10/10/2024 4:12:31 AM

**MASSI-00105**



### Chester County Health Department
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone: (610) 793-1510

Insp. ID: 1087094
Insp. Date: 10/8/2024
Insp. Reason: Follow-up
No. of Risk Factors: 8
No. of Repeat Risk Factors: 1
Overall Compliance: OUT

### OBSERVATIONS AND CORRECTIVE ACTIONS
Violations cited in this report must be corrected within the timeframes below

| Item Number | Violation of Code | Comment | Correct By Date | Repeat Violation |
|---|---|---|---|---|
| 1. | 2 - 102.11(A-C1)(C4-16) | The Person in Charge does not have adequate knowledge of food safety in this food facility as evidenced by this non-compliant inspection.<br>Lack of procedures for date marking, temp checks, temp logging, and sanitizing of food contact surfaces were found. | 10/9/2024 | |
| 8. | 6 - 301.11 | No soap supplied to hand sink near 3 bay sink. No soap cartridge was found in dispenser when new one was placed in it during inspection.<br>Soap must be supplied at hand sinks at all times. | | |
| 14. | 4 - 501.114 | Dishwasher was not repaired and was still not reaching correct temp for sanitizing. Staff were not manually sanitizing dishes or (inmate trays) as required during last inspection.<br>All food contact surfaces must be cleaned and sanitized. Until dishwasher is repaired and capable of sanitizing trays - you MUST complete the sanitizing step at the 3 bay sink. | 10/8/2024 | Repeat Violation |
| 14. | 4 - 501.114 | Cl was still being used at the 3 bay sink. Concentration was over 100ppm. Solution was diluted to 50ppm.<br><br>During inspection, quat ammonia for the 3 bay sink dispenser was found. It was installed at 3 bay. Ensure staff are checking concentration using the correct test strips each day. Quat concentration must be 200-400ppm. | 10/8/2024 | Repeat Violation |
| 14. | 4 - 601.11(A) | No sanitizer buckets were being used throughout the kitchen. One bottle of Ecolab Rapid Multi-Surface Disinfectant Cleaner was being used on food contact surfaces. Upon review -this is not approved for food contact surfaces. Discontinue use on food surface immediately. | 10/8/2024 | |
| 17. | 3 - 403.11 | When asked how rice is reheated it was learned that it is sometimes placed in the warming boxes. Warming boxes are meant to hold hot foods at 135F or more, not cook or reheat foods. Ensure NO foods are re-heated in warmers. | 10/8/2024 | |
| 19. | 3 - 501.16(A1) | Special Dietary Area - steam table bays not working. From left to right - bay 1 and 3 are reportedly not working. Sloppy joe meat in bay 1 was 122F. Meat was reportedly held there for about 90 minutes.<br><br>No temp checks are currently done on any hot held foods. Any food that is hot held must be temperature checked before service to ensure foods are maintained at 135F or more for service. These temperature must be added to the daily log.<br><br>Repair steam table to maintain foods at 135F. Do NOT hold foods in these bays if they can't be maintained at 135F or more. | 10/10/2024 | |
| 20. | 3 - 501.16(A2)(B) | Cabbage slaw (54F) and turkey bologna (43F) were found on kitchen table.<br>It was reported that these items were being moved from the 3 door refrigerator used for the serving line to the walk in cooler.<br>Foods must be held at 41F or less. Cabbage was discarded. Bologna was moved to walk in. | 10/8/2024 | |
| 21. | 3 - 501.17 | Foods with improper prepared dates were observed - bologna found on table was dated 10/8 but was sliced and served on 10/7. Carrot salad in walk in was dated 10/2 was not found on menu for that day. Ensure this food is discarded today as it has reached it's 7 day shelf life.<br>A tray of mixed vegetables in the walk in cooler had no date.<br><br>Ensure foods are dated with the date made. If menu changes are made those must be documented.<br>Do not save foods that cannot be used within 7 days of date made. | 10/8/2024 | |
| 26. | 7 - 204.11 | Multi surface disinfectant used on food contact surfaces. Discontinue use as it is not approved for food surfaces. | 10/8/2024 | Repeat Violation |
| 31. | 3 - 501.15 | Foods are cooled in 8 inch pans. No cooling temps are being taken or cooling logs showing that foods are cooled to 70F within 2 hours and then from 70F to 41F within 4 more hours. Internal temperatures of hot foods that are cooled for reuse must be taken - not just surface temps. | 10/8/2024 | |
| 46. | 4 - 501.110 | Dishwasher has not been repaired. Trays may be washed in the dishwasher but must then trays must be taken to the 3 bay sink to be sanitized.<br>Continue this practice until machine is repaired and reaches proper sanitizing temperatures.<br><br>Use the high temp thermometer daily to check temp and log results. | 10/11/2024 | Repeat Violation |

10/10/2024 4:12:31 AM

**MASSI-00106**

Page 2 of 3



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

**Food & Institutions Division**

| **Retail Food Facility Inspection Report** |
| --- |

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone: (610) 793-1510

Insp. ID: 1087094
Insp. Date: 10/8/2024
Insp. Reason: Follow-up
No. of Risk Factors: 8
No. of Repeat Risk Factors: 1
Overall Compliance: OUT

### PUBLISHED COMMENTS

The cooking, holding and serving of lunch was observed today.
There are only 2 hot holding units available. Sloppy joe meat and beans were cooked, then held in warmers. Rice was held in steam kettle. Temps of foods taken by the EHS after cooking, in holding units and at service line. All were within required range.
Dept notes that depending on menu, an additional warmer unit may be needed to hold and maintain all hot foods at 135F or more.

Serving of foods (plating of trays) takes approximately 1 hour and 15 minutes. Trays are filled and placed on carts for each cell block. Once all carts are loaded, staff are called from the cell blocks to come pick up the carts. Foods from the 1st cart filled were temperature checked approximately 1 hour after they had been trayed (Rice 119F, Sloppy Joe meat 110F) Both of those foods were 160-180F when placed on tray. There is significant temperature loss in the hour food sits on tray and eventually makes it inmates. Special dietary meals that are placed in Styrofoam container were lower after one hour (Meat 108F Rice 117F). Hot holding bags or boxes for some early trayed carts may be needed to better maintain food temperatures.

Better managerial control is needed in this kitchen. Procedures for cooking, cooling and reheating are needed.

A 2nd follow up fee of $250 will be charge for failure to correct violations and follow procedures you were given during the last inspection. You will be billed for this fee. The next inspection will occur within 2 weeks. Failure to comply at that time will result in a $350 reinspection fee.

Dept has received pictures of foods that were in the walk in cooler on 10/3/24. Photos included a pan of leftover chili from 10/2/24. This confirms what the Dept had been told by Aramark employee Joe. Dept informed Aramark staff on 10/3 to hold all foods in walk in, do not discard or serve any foods that had been previously prepared. No pan of chili was found during inspection on 10/4/24.
Dept is also reviewing video of the walk in area to determine who removed the food from the cooler.
The Dept is consulting with our legal team to discuss legal action if Aramark did in fact discard food that had been placed on a hold order.

10/10/2024 4:12:31 AM

**MASSI-00107**

Page 3 of 3

Exhibit D-3



**Chester County Health Department**
**Chester County Government Services Center**

Food & Institutions Division

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1089166
Insp. Date: 10/21/2024
Insp. Reason: Follow-up
No. of Risk Factors: 2
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS
Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

| Supervision | | | | | |
|---|---|---|---|---|---|
| 1. Person in charge present, demonstrates knowledge, & performs duties | In | | 14. Food-contact surfaces: cleaned & sanitized | Out | |
| **Employee Health** | | | 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | N/O | |
| 2. Management & food employee knowledge, responsibilities & reporting | N/O | | **Time/Temperature Controlled for Safety Food (TCS Food)** | | |
| 3. Proper use of restriction & exclusion | N/O | | 16. Proper cooking time & temperature | N/O | |
| **Good Hygienic Practices** | | | 17. Proper reheating procedures for hot holding | Out, R | |
| 4. Proper eating, tasting, drinking, or tobacco use | N/O | | 18. Proper cooling time & temperature | N/O | |
| 5. No discharge from eyes, nose, and mouth | N/O | | 19. Proper hot holding temperature | N/O | |
| **Preventing Contamination by hands** | | | 20. Proper cold holding temperature | In | |
| 6. Hands clean & properly washed | N/O | | 21. Proper date marking & disposition | In | |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | N/O | | 22. Time as a public health control; procedures & record | N/O | |
| 8. Adequate handwashing facilities supplied & accessible | In | | **Consumer Advisory** | | |
| **Approved Source** | | | 23. Consumer advisory provided for raw or undercooked foods | N/O | |
| 9. Food obtained from approved source | N/O | | **Highly Susceptible Population** | | |
| 10. Food received at proper temperature | N/O | | 24. Pasteurized foods used; prohibited foods not offered | N/O | |
| 11. Food in good condition, safe, & unadulterated | N/O | | **Chemical** | | |
| 12. Required records available: shellstock tags, parasite destruction | N/O | | 25. Food additives: approved & properly used | N/O | |
| **Protection From Contamination** | | | 26. Toxic substances properly identified, stored & used | In | |
| 13. Food separated & protected from cross contamination | N/O | | **Conformance with Approved Procedure** | | |
| | | | 27. Compliance with variance, specialized process, & HACCP plan | N/O | |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

| Safe Food and Water | | | | | |
|---|---|---|---|---|---|
| 28. Pasteurized eggs used where required | N/O | | **Proper Use of Utensils** | | |
| 29. Water & ice from approved source | N/O | | 41. In-use utensils: properly stored | N/O | |
| 30. Variance obtained for specialized processing methods | N/O | | 42. Utensils, equipment & linens: properly stored, dried & handled | N/O | |
| **Food Temperature Control** | | | 43. Single-use & single-service articles: properly stored & used | N/O | |
| 31. Proper cooling methods used; adequate equipment for temperature control | Out | | 44. Gloves used properly | N/O | |
| 32. Fruits and vegetables cooked properly for hot holding | N/O | | **Utensils, Equipment and Vending** | | |
| 33. Approved thawing methods used | N/O | | 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | Out | |
| 34. Thermometer provided & accurate | N/O | | 46. Warewashing facilities: installed, maintained, & used; test strips | In | |
| **Food Identification** | | | 47. Non-food contact surfaces clean | N/O | |
| 35. Food properly labeled; original container | N/O | | **Physical Facilities** | | |
| **Prevention of Food Contamination** | | | 48. Hot & cold water available; adequate pressure | N/O | |
| 36. Insects, rodents & animals not present | N/O | | 49. Plumbing installed; proper backflow devices | N/O | |
| 37. Contamination prevented during food preparation, storage & display | N/O | | 50. Sewage & waste water properly disposed | N/O | |
| 38. Personal cleanliness | N/O | | 51. Toilet facilities: properly constructed, supplied, & cleaned | N/O | |
| 39. Wiping cloths: properly used & stored | N/O | | 52. Garbage & refuse properly disposed; facilities maintained | N/O | |
| 40. Washing fruit & vegetables | N/O | | 53. Physical facilities installed, maintained, & clean | N/O | |
| | | | 54. Adequate ventilation & lighting; designated areas used | N/O | |

### FOOD EMPLOYEE CERTIFICATION

| Certified Food Manager | | |
|---|---|---|
| 55. Certification displayed properly and is up-to-date. | N/O | |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 10/21/2024 | Jeff Contrady (Signature on File) | | 10/21/2024 | Carrie Lane | *Carrie A Lane* | 10/21/2024 | 10:30 AM | 1:30 PM |

10/22/2024 4:07:24 AM

**MASSI-00108**

Page 1 of 2



**Chester County Health Department**
**Chester County Government Services Center**

**Food & Institutions Division**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1089166
Insp. Date: 10/21/2024
Insp. Reason: Follow-up
No. of Risk Factors: 2
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### OBSERVATIONS AND CORRECTIVE ACTIONS
Violations cited in this report must be corrected within the timeframes below

| Item Number | Violation of Code | Comment | Correct By Date | Repeat Violation |
|---|---|---|---|---|
| 8. | 5 - 202.12 | The handwash sink located in the ODR did not have water at a temperature of at least 85°F. If other sinks in the kitchen and surround areas of the prison are not turned off, cold water back flows into lines causing lack of hot water in the ODR. All valves were closed and hot water was restored during inspection. Ensure kitchen staff turn off water when not in use. | | |
| 14. | 4 - 703.11 | Main dishwasher - only after several runs of the machine, did the thermometer indicate 160F at the dish surface. Temp log shows previous temps to be 170+F. Ensure machine is maintaining a constant temp so that all trays are sanitized.<br><br>ODR - dishwasher dish surface did not reach 160F. This may be related to the lack of hot water found in this are of the kitchen. Hot water was restored and machine temp was rising. However, the rinse cycle was not working properly and taking a long time to trigger. Machine must be serviced to ensure rinse cycle is working properly. All trays and equipment washed in this machine must be taken to the 3 bay sink and manually sanitized until machine is repaired. | 10/22/2024 | |
| 17. | 3 - 403.11 | Ensure staff know proper cooking and re-heating temperature minimums. During review of rice reheating procedures, it was learned that rice may only be reaching 140F not the required 165F. | 10/21/2024 | Repeat Violation |
| 31. | 3 - 501.15 | Pasta was prepared today and cooled for service. A temp of 68F was recorded. This temp was the taken after cooking and pasta was rinsed with cold water. It was then placed in walk in but no further temp check was done. A service temp of food must be taken. If foods are re-used, temp checks must be done to ensure foods reach critical control points as required. | 10/22/2024 | |
| 45. | 4 - 501.11 | Dietary Area - steam table has not been repaired. No foods were being stored in the unit at the time of inspection, but it was reportedly still being used.<br><br>Unit to be repaired tomorrow.<br><br>Ensure daily temp checks are done at this stationd and recorded. | 10/22/2024 | |

### PUBLISHED COMMENTS

ODR - it was noted that the fire suppression tag at the door indicated deficiencies with the system - ensure these are repaired within 30 days.

Additional hot holding units have been requested/ordered.

Soap supplied to all handsinks.
Quat sanitizer at 3 bay and sanitizer buckets 300ppm - test strips supplied.
Foods leftover from lunch were not being reused and were discarded.

A follow-up inspection will be conducted to ensure compliance with the above. If violations have not been corrected by the time of this visit, the License to Operate will not be issued and a fee of $250 will be charged. A fee of $350 will be charged for a third follow-up inspection and for each subsequent inspection thereafter as necessary to verify that violations have been corrected. The license will not be issued until all violations have been corrected and all fees have been paid.

10/22/2024 4:07:24 AM

**MASSI-00109**

Page 2 of 2

Exhibit D-41



**Chester County Health Department**
**Chester County Government Services Center**

**Food & Institutions Division**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON  Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1089392
Insp. Date: 10/22/2024
Insp. Reason: Follow-up
No. of Risk Factors: 1
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS
Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

| | | | | | |
|---|---|---|---|---|---|
| **Supervision** | | | 14. Food-contact surfaces: cleaned & sanitized | | Out, R |
| 1. Person in charge present, demonstrates knowledge, & performs duties | N/O | | 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | | N/O |
| **Employee Health** | | | **Time/Temperature Controlled for Safety Food (TCS Food)** | | |
| 2. Management & food employee knowledge, responsibilities & reporting | N/O | | 16. Proper cooking time & temperature | | N/O |
| | | | 17. Proper reheating procedures for hot holding | | In |
| 3. Proper use of restriction & exclusion | N/O | | 18. Proper cooling time & temperature | | N/O |
| **Good Hygienic Practices** | | | 19. Proper hot holding temperature | | N/O |
| 4. Proper eating, tasting, drinking, or tobacco use | N/O | | 20. Proper cold holding temperature | | N/O |
| 5. No discharge from eyes, nose, and mouth | N/O | | 21. Proper date marking & disposition | | N/O |
| **Preventing Contamination by hands** | | | 22. Time as a public health control; procedures & record | | N/O |
| 6. Hands clean & properly washed | N/O | | **Consumer Advisory** | | |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | N/O | | 23. Consumer advisory provided for raw or undercooked foods | | N/O |
| 8. Adequate handwashing facilities supplied & accessible | N/O | | **Highly Susceptible Population** | | |
| **Approved Source** | | | 24. Pasteurized foods used; prohibited foods not offered | | N/O |
| 9. Food obtained from approved source | N/O | | **Chemical** | | |
| 10. Food received at proper temperature | N/O | | 25. Food additives: approved & properly used | | N/O |
| 11. Food in good condition, safe, & unadulterated | N/O | | 26. Toxic substances properly identified, stored & used | | N/O |
| 12. Required records available: shellstock tags, parasite destruction | N/O | | **Conformance with Approved Procedure** | | |
| **Protection From Contamination** | | | 27. Compliance with variance, specialized process, & HACCP plan | | N/O |
| 13. Food separated & protected from cross contamination | N/O | | | | |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

| | | | | | |
|---|---|---|---|---|---|
| **Safe Food and Water** | | | **Proper Use of Utensils** | | |
| 28. Pasteurized eggs used where required | N/O | | 41. In-use utensils: properly stored | | N/O |
| 29. Water & ice from approved source | N/O | | 42. Utensils, equipment & linens: properly stored, dried & handled | | N/O |
| 30. Variance obtained for specialized processing methods | N/O | | 43. Single-use & single-service articles: properly stored & used | | N/O |
| **Food Temperature Control** | | | 44. Gloves used properly | | N/O |
| 31. Proper cooling methods used; adequate equipment for temperature control | In | | **Utensils, Equipment and Vending** | | |
| 32. Fruits and vegetables cooked properly for hot holding | N/O | | 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | | Out, R |
| 33. Approved thawing methods used | N/O | | 46. Warewashing facilities: installed, maintained, & used; test strips | | N/O |
| 34. Thermometer provided & accurate | N/O | | 47. Non-food contact surfaces clean | | N/O |
| **Food Identification** | | | **Physical Facilities** | | |
| 35. Food properly labeled; original container | N/O | | 48. Hot & cold water available; adequate pressure | | Out |
| **Prevention of Food Contamination** | | | 49. Plumbing installed; proper backflow devices | | N/O |
| 36. Insects, rodents & animals not present | N/O | | 50. Sewage & waste water properly disposed | | N/O |
| 37. Contamination prevented during food preparation, storage & display | N/O | | 51. Toilet facilities: properly constructed, supplied, & cleaned | | N/O |
| 38. Personal cleanliness | N/O | | 52. Garbage & refuse properly disposed; facilities maintained | | N/O |
| 39. Wiping cloths: properly used & stored | N/O | | 53. Physical facilities installed, maintained, & clean | | N/O |
| 40. Washing fruit & vegetables | N/O | | 54. Adequate ventilation & lighting; designated areas used | | N/O |

### FOOD EMPLOYEE CERTIFICATION

| | | |
|---|---|---|
| **Certified Food Manager** | | |
| 55. Certification displayed properly and is up-to-date. | N/O | |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 10/22/2024 | emailed report (Signature on File) | | 10/22/2024 | Carrie Lane | *Carrie A Lane* | 10/22/2024 | 8:00 AM | 9:35 AM |

**MASSI-00110**



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1089392
Insp. Date: 10/22/2024
Insp. Reason: Follow-up
No. of Risk Factors: 1
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### OBSERVATIONS AND CORRECTIVE ACTIONS
Violations cited in this report must be corrected within the timeframes below

| Item Number | Violation of Code | Comment | Correct By Date | Repeat Violation |
|---|---|---|---|---|
| 14. | 4 - 703.11 | Lack of hot water to the kitchen is hindering the use of the main dishwasher. The machine struggles to maintain correct water temps to ensure all dish surfaces reach 160F. Staff today said they ran the thermometer several times and while most of the time it read 160F+, there were runs that it did not reach temp.<br><br>An additional hot water heater, additional or larger booster heater is needed to ensure this machine works properly. Ensuring that trays are properly sanitized is critical. Install upgrades or new equipment within 14 days. | 11/6/2024 | Repeat Violation |
| 45. | 4 - 501.11 | Dietary Area - steam table has not been repaired. No foods were being stored in the unit at the time of inspection, but it was reportedly still being used. Unit was to be repaired today, but work had not begun by end of inspection. Ensure daily temp checks are done at this stationd and recorded. | 10/23/2024 | Repeat Violation |
| 45. | 4 - 501.11 | ODR dishwasher - while it did reach 160F at the dish surface, the cycle still does not seem to trigger properly.<br>Service this machine. | 10/23/2024 | Repeat Violation |
| 48. | 5 - 103.11 | Lack of hot water was noted in the ODR again. Water had to run for several minutes and a valve checked in main kitchen. An additional heater is needed for the ODR to ensure it is always supplied with hot water. | 11/6/2024 | |

### PUBLISHED COMMENTS

Observed the prep and service of chili and rice meal similar to that of the suspected outbreak.
Chili meat was already cooked and in warmer. Cook temp was logged and EHS took hot holding temp 172F. Rice was being cooked and was served from kettle. It was noted that 8 pans of meat were in hot holding. This filled the holding capacity. If rice had been done early, there would have been no room in warmers and oven was in use making cake. Additional warmers for holding hot foods are needed.

Logging of food temps and holding temps are being done consistently. No leftover foods are being saved and re-served at this time. All Aramark staff are attending or have attended a Food Manager Class. Mr. Massi needs to renew his certification as well - he oversees staff and some staff training in the kitchen.

Dept asked about emergency planning should the kitchen need to be shut down or otherwise become unusable. Aramark staff stated that perhaps another kitchen on the property could be used or they could have cold meals delivered from one of their commissaries during such a time.

An additional follow up will be held to ensure continued compliance.

Exhibit D-5



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1091364
Insp. Date: 10/3/2024
Insp. Reason:  Food born Investigation
No. of Risk Factors: 2
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS

Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

| | | | | |
|---|---|---|---|---|
| **Supervision** | | 14. Food-contact surfaces: cleaned & sanitized | Out | |
| 1. Person in charge present, demonstrates knowledge, & performs duties | N/O | 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | N/O | |
| **Employee Health** | | **Time/Temperature Controlled for Safety Food (TCS Food)** | | |
| 2. Management & food employee knowledge, responsibilities & reporting | N/O | 16. Proper cooking time & temperature | N/O | |
| | | 17. Proper reheating procedures for hot holding | N/O | |
| 3. Proper use of restriction & exclusion | N/O | 18. Proper cooling time & temperature | N/O | |
| **Good Hygienic Practices** | | 19. Proper hot holding temperature | N/O | |
| 4. Proper eating, tasting, drinking, or tobacco use | N/O | 20. Proper cold holding temperature | In | |
| 5. No discharge from eyes, nose, and mouth | N/O | 21. Proper date marking & disposition | In | |
| **Preventing Contamination by hands** | | 22. Time as a public health control; procedures & record | N/A | |
| 6. Hands clean & properly washed | N/O | **Consumer Advisory** | | |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | N/O | 23. Consumer advisory provided for raw or undercooked foods | N/A | |
| 8. Adequate handwashing facilities supplied & accessible | In | **Highly Susceptible Population** | | |
| **Approved Source** | | 24. Pasteurized foods used; prohibited foods not offered | N/A | |
| 9. Food obtained from approved source | In | **Chemical** | | |
| 10. Food received at proper temperature | N/O | 25. Food additives: approved & properly used | N/A | |
| 11. Food in good condition, safe, & unadulterated | In | 26. Toxic substances properly identified, stored & used | Out | |
| 12. Required records available: shellstock tags, parasite destruction | N/A | **Conformance with Approved Procedure** | | |
| **Protection From Contamination** | | 27. Compliance with variance, specialized process, & HACCP plan | N/O | |
| 13. Food separated & protected from cross contamination | In | | | |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

| | | | | |
|---|---|---|---|---|
| **Safe Food and Water** | | **Proper Use of Utensils** | | |
| 28. Pasteurized eggs used where required | N/O | 41. In-use utensils: properly stored | In | |
| 29. Water & ice from approved source | In | 42. Utensils, equipment & linens: properly stored, dried & handled | In | |
| 30. Variance obtained for specialized processing methods | N/O | | | |
| **Food Temperature Control** | | 43. Single-use & single-service articles: properly stored & used | In | |
| 31. Proper cooling methods used; adequate equipment for temperature control | N/O | 44. Gloves used properly | In | |
| | | **Utensils, Equipment and Vending** | | |
| 32. Fruits and vegetables cooked properly for hot holding | N/O | 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | In | |
| 33. Approved thawing methods used | N/O | | | |
| 34. Thermometer provided & accurate | In | 46. Warewashing facilities: installed, maintained, & used; test strips | Out | |
| **Food Identification** | | | | |
| 35. Food properly labeled; original container | In | 47. Non-food contact surfaces clean | In | |
| **Prevention of Food Contamination** | | **Physical Facilities** | | |
| 36. Insects, rodents & animals not present | In | 48. Hot & cold water available; adequate pressure | In | |
| 37. Contamination prevented during food preparation, storage & display | In | 49. Plumbing installed; proper backflow devices | In | |
| | | 50. Sewage & waste water properly disposed | In | |
| 38. Personal cleanliness | In | 51. Toilet facilities: properly constructed, supplied, & cleaned | In | |
| 39. Wiping cloths: properly used & stored | In | 52. Garbage & refuse properly disposed; facilities maintained | In | |
| 40. Washing fruit & vegetables | N/O | 53. Physical facilities installed, maintained, & clean | In | |
| | | 54. Adequate ventilation & lighting; designated areas used | In | |

### FOOD EMPLOYEE CERTIFICATION

| | | |
|---|---|---|
| **Certified Food Manager** | | |
| 55. Certification displayed properly and is up-to-date. | In | |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 10/3/2024 | Allen Kramer (Signature on File) | | 10/3/2024 | Kyle Walsh | *Kyle Walsh* | 10/3/2024 | 11:00 AM | 3:30 PM |

MASSI-00102



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382 County: Chester Region: Territory 7S
Phone:

Insp. ID: 1091364
Insp. Date: 10/3/2024
Insp. Reason: Food born Investigation
No. of Risk Factors: 2
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### OBSERVATIONS AND CORRECTIVE ACTIONS
Violations cited in this report must be corrected within the timeframes below

| Item Number | Violation of Code | Comment | Correct By Date | Repeat Violation |
|---|---|---|---|---|
| 14. | 4 - 501.114 | In use sanitizer at 3-compartment sink contained no detectable sanitizer. An incorrect bottle was hooked up to dispenser. See chemical violation below.<br>Bleach solution made to 200ppm and diluted to 100ppm chlorine during inspection. Sample chlorine test strips given to facility Person-in-Charge to allow for testing until correct chemical sanitizer is delivered. | 10/7/2024 | |
| 14. | 4 - 703.11 | The food-contact surfaces of equipment and utensils did not reach 160°F during the sanitizing cycle of the high temperature dishwasher as evidenced by an irreversible reading thermometer. Max temperature achieved during inspection after three runs was 133°F at the dish surface.<br>Repair machine, use 3-compartment sink to sanitize trays after running through dish machine until proper temperature is achieved | 10/7/2024 | |
| 26. | 7 - 204.11 | Facility observed using Diversey Neutral Disinfectant EPA Reg. # 1839-169-70627 at the 3-compartment sink sanitizer solution dispenser as opposed to the dispenser??s label which indicated Oasis 146 Quaternary Ammonium Sanitizer EPA Reg. # 1677-198 was to be used with this dispenser.<br>Discontinue use of unapproved disinfectant on food contact surfaces, service dispenser to purge the concentrate of disinfectant. Use only chemicals indicated with auto dispensers and do not use products for any uses other than those indicated on the EPA Reg. Label. | 10/7/2024 | |
| 46. | 4 - 501.110 | The wash solution temperature in the single tank conveyor, dual temperature mechanical warewashing equipment was 133°F, rather than not less than 160°F as required by the data plate on the machine.<br><br>Repair to allow for proper use in accordance with manufacturer??s instructions | 10/7/2024 | |
| 46. | 4 - 302.13 | An irreversible registering temperature indicator or thermometer for measuring the utensil surface temperature in the high temperature dishwasher is not available. Thermometer was in an employee??s desk and not readily available.<br><br>Obtain and use daily to ensure a dish surface temperature of 160°F or more is achieved in rinse. | | |

11/2/2024 5:15:56 AM

**MASSI-00103**



**Chester County Health Department**
Chester County Government Services Center

Food & Institutions Division

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON  Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1091364
Insp. Date: 10/3/2024
Insp. Reason: Food born Investigation
No. of Risk Factors: 2
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### PUBLISHED COMMENTS

An environmental assessment was conducted in response to a suspected foodborne outbreak in the population served by this facility. Interview, sampling, and observations noted below

SAMPLES OBTAINED:

Lunch tray served on 10/1 consisting of Chili, cornbread, and garden salad.
Time of Collection: 11:00AM
Temperature at time of collection: 37°F

Dinner tray served on 10/1 consisting of poultry stroganoff mixed with rotini pasta, green beans, cole slaw, oatmeal cookie, 2 sliced of white bread.
Time of Collection: 11:00AM
Temperature at time of collection: 37°F

Pasta Salad dated 9/30/24 made with rotini. 2 specimen jars obtained from a bulk pan.
Time of collection: 11:00AM
Temperature at time of collection: 37°F

Macaroni pasta dated 9/30/24 but not served on 10/1. 2 specimen jars obtained from a bulk pan.
Time of collection: 11:00AM
Temperature at time of collection: 37°F

All remaining foods in bulk pans and additional meal trays from 10/2 were labeled to prevent use or discard and placed in a freezer. Do not destroy this food until the investigation is concluded.

EHS Lane conducted an interview to determine procedures and preparation methods. Notes below.

Food temp logs are not being maintained. Daily logs for final cook temps and hot holding temps are not being logged. It could not be determined as to what time foods for lunch or dinner were cooked (reached final cooking temp) or if foods were held in warmers, for how long and at what temperature. New logging procedures are needed to ensure foods are held at proper temperatures after cooking and before service.

Chili meats were cooked in tilt skillet. Rice was cooked in kettle. Final cooking temps were logged and all met required cooking temperatures. No information on if these items were held in hot holding and if so, at what temperature was available.

Stroganoff meat cooked in tilt skillet. Pasta cooked in kettle. Once cooked these 2 ingredients are combined. Green beans are frozen then boiled for service. All final cooking temperatures met required cooking temperatures. Cole Slaw cold holding temp was logged and met required cold holding requirements.

Cleaning of kettles and tilt skillet was reviewed. Once emptied, kettles are cleaned with soap and water and metal scrubber. A step stool is supplied to allow cleaning of bottom of kettle surface. Drain line is taken apart and manually scrubbed with soap and water. No sanitizer is reportedly used on this equipment.

Manual dish washing detergent and sanitizer dispensing equipment was replaced within the previous two weeks and ordering of the Scout and Oasis-146 concentrates has been difficult due to specific logistics within the facility; secure storage of the chemicals.

Hot water @ 3-Compartment Sink: 121°F
Ambient Temperature in WIC: 37°F

A follow-up inspection will be conducted to verify correction of noted items above. Please contact the department at with any questions or if ready for inspection prior to date indicated for violations.
Assigned EHS: Carrie Lane, clane@chesco.org
Supervisor: Kyle Walsh, KJWalsh@chesco.org

Exhibit D-6



**Chester County Health Department**
**Chester County Government Services Center**

**Food & Institutions Division**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1095868
Insp. Date: 11/26/2024
Insp. Reason: Follow-up
No. of Risk Factors: 3
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS
Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

| | | | | |
|---|---|---|---|---|
| **Supervision** | | | 14. Food-contact surfaces: cleaned & sanitized | In |
| 1. Person in charge present, demonstrates knowledge, & performs duties | N/O | | 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | N/O |
| **Employee Health** | | | **Time/Temperature Controlled for Safety Food (TCS Food)** | |
| 2. Management & food employee knowledge, responsibilities & reporting | N/O | | 16. Proper cooking time & temperature | N/O |
| | | | 17. Proper reheating procedures for hot holding | N/O |
| 3. Proper use of restriction & exclusion | N/O | | 18. Proper cooling time & temperature | N/O |
| **Good Hygienic Practices** | | | 19. Proper hot holding temperature | Out |
| 4. Proper eating, tasting, drinking, or tobacco use | Out, C | | 20. Proper cold holding temperature | In |
| 5. No discharge from eyes, nose, and mouth | N/O | | 21. Proper date marking & disposition | In |
| **Preventing Contamination by hands** | | | 22. Time as a public health control; procedures & record | N/O |
| 6. Hands clean & properly washed | N/O | | **Consumer Advisory** | |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | N/O | | 23. Consumer advisory provided for raw or undercooked foods | N/O |
| 8. Adequate handwashing facilities supplied & accessible | N/O | | **Highly Susceptible Population** | |
| **Approved Source** | | | 24. Pasteurized foods used; prohibited foods not offered | N/O |
| 9. Food obtained from approved source | N/O | | **Chemical** | |
| 10. Food received at proper temperature | N/O | | 25. Food additives: approved & properly used | N/O |
| 11. Food in good condition, safe, & unadulterated | N/O | | 26. Toxic substances properly identified, stored & used | N/O |
| 12. Required records available: shellstock tags, parasite destruction | N/O | | **Conformance with Approved Procedure** | |
| **Protection From Contamination** | | | 27. Compliance with variance, specialized process, & HACCP plan | N/O |
| 13. Food separated & protected from cross contamination | Out | | | |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

| | | | | |
|---|---|---|---|---|
| **Safe Food and Water** | | | **Proper Use of Utensils** | |
| 28. Pasteurized eggs used where required | N/O | | 41. In-use utensils: properly stored | N/O |
| 29. Water & ice from approved source | N/O | | 42. Utensils, equipment & linens: properly stored, dried & handled | N/O |
| 30. Variance obtained for specialized processing methods | N/O | | 43. Single-use & single-service articles: properly stored & used | N/O |
| **Food Temperature Control** | | | 44. Gloves used properly | N/O |
| 31. Proper cooling methods used; adequate equipment for temperature control | N/O | | **Utensils, Equipment and Vending** | |
| 32. Fruits and vegetables cooked properly for hot holding | N/O | | 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | Out, R |
| 33. Approved thawing methods used | N/O | | 46. Warewashing facilities: installed, maintained, & used; test strips | N/O |
| 34. Thermometer provided & accurate | N/O | | 47. Non-food contact surfaces clean | N/O |
| **Food Identification** | | | **Physical Facilities** | |
| 35. Food properly labeled; original container | N/O | | 48. Hot & cold water available; adequate pressure | In |
| **Prevention of Food Contamination** | | | 49. Plumbing installed; proper backflow devices | N/O |
| 36. Insects, rodents & animals not present | N/O | | 50. Sewage & waste water properly disposed | N/O |
| 37. Contamination prevented during food preparation, storage & display | N/O | | 51. Toilet facilities: properly constructed, supplied, & cleaned | N/O |
| 38. Personal cleanliness | N/O | | 52. Garbage & refuse properly disposed; facilities maintained | N/O |
| 39. Wiping cloths: properly used & stored | N/O | | 53. Physical facilities installed, maintained, & clean | N/O |
| 40. Washing fruit & vegetables | N/O | | 54. Adequate ventilation & lighting; designated areas used | N/O |

### FOOD EMPLOYEE CERTIFICATION

| | |
|---|---|
| **Certified Food Manager** | |
| 55. Certification displayed properly and is up-to-date. | N/O |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 11/26/2024 | emailed report (Signature on File) | | 11/26/2024 | Carrie Lane | *Carrie A Lane* | 11/26/2024 | 8:20 AM | 11:10 PM |

11/27/2024 3:14:42 AM

MASSI-00112

Page 1 of 2



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1095868
Insp. Date: 11/26/2024
Insp. Reason: Follow-up
No. of Risk Factors: 3
No. of Repeat Risk Factors: 0
Overall Compliance: OUT

### OBSERVATIONS AND CORRECTIVE ACTIONS
Violations cited in this report must be corrected within the timeframes below

| Item Number | Violation of Code | Comment | Correct By Date | Repeat Violation |
|---|---|---|---|---|
| 4. | 2 - 401.11 | An open employee's beverage container was observed on the ODR sandwich prep unit, which is a food preparation area.<br>Drinks must have lids and may not be store on food prep surfaces.<br>Ensure all staff are properly trained.<br><br>Drink was removed. | | |
| 13. | 3 - 304.11 | Observed kitchen workers place a colander style metal pan on floor grate to drain rice into from the kettle.<br>Staff stopped this immediately.<br>NEVER place food pans on floor.  Pan may be placed on a low cart or crate that can later we washed.<br>Ensure all staff are trained to handle food safely while cooking and prepping for service. | 11/26/2024 | |
| 19. | 3 - 501.16(A1) | Cooked rice and chili were not placed in warmers after being cooked and panned for service. Food pans were observed on a cart near the tray line.<br>Rice temperature was 115F, 106F on serving line.  Rice was reportedly temped at 163F shortly after cooking.<br>Chili was 175F<br><br>Upon Inspector order, rice was placed on flattop and quicky reheated to 165F and either placed in warmer or taken to serving line.<br>Chili was placed in warmers.<br><br>Ensure foods are placed into pans that will fit in warmers and are moved to warmers once panned. DO NOT let food sit on cart waiting for use at the serving line.  Ensure foods are temp checked when placed on serving line to ensure they are at least 135F.  If they are not, they must be reheated to 165F or more. | 11/26/2024 | |
| 45. | 4 - 501.11 | Special Dietary line - Steam table has not been replaced.  New unit is in basement awaiting electrical work.<br>Install this new unit by 12/6/24.<br>Rice in the non-functioning steam table was 120F - it was placed in steamer to reheat. | 12/6/2024 | Repeat Violation |
| 45. | 4 - 501.11 | ODR dishwasher did not reach 160F at the dish surface after several cycles. Until a consistent temperature can be maintained ensuring dishes are sanitized during every run of this unit, all dishes must be manually sanitized after washing in the machine. | 11/26/2024 | Repeat Violation |
| 45. | 4 - 501.11 | Gaskets on the Advanco 3 door refrigerator at the serving line have not been replaced.  To ensure foods temps are maintained properly - door gaskets must seal properly.  Install new gaskets. | 12/6/2024 | Repeat Violation |
| 45. | 4 - 201.11 | New larger sheet pans are needed for use in warmers. Current pans are too small and do not properly support food in the new warmers. Supply new sheet trays. | 12/6/2024 | |

### PUBLISHED COMMENTS

Conveyor dishwasher has had Cl installed to sanitize dishes.  Cl was 50ppm - Ensure staff use Cl test strips to check Cl levels and log daily.  Additional work is planned to better ensure sufficient hot water is supplied to the kitchen (especially the dishwashers).

Lack of training and supervision remain an issue.  Dept recommends online food safety trainings (on County issued tablets) for all inmate food service workers.

A 3rd follow up fee will be charged.  While some items are much better (date marking, sanitizer use, temp checks), poor food handling and hot holding remain issues.  You will be billed for the re-inspection fee.

Exhibit D-7



**Chester County Health Department**
**Chester County Government Services Center**

**Food & Institutions Division**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1105212
Insp. Date: 2/4/2025
Insp. Reason: Follow-up
No. of Risk Factors: 0
No. of Repeat Risk Factors: 0
Overall Compliance: IN

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS
Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

| | | | | | |
|---|---|---|---|---|---|
| **Supervision** | | | 14. Food-contact surfaces: cleaned & sanitized | N/O | |
| 1. Person in charge present, demonstrates knowledge, & performs duties | N/O | | 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | N/O | |
| **Employee Health** | | | **Time/Temperature Controlled for Safety Food (TCS Food)** | | |
| 2. Management & food employee knowledge, responsibilities & reporting | N/O | | 16. Proper cooking time & temperature | N/O | |
| 3. Proper use of restriction & exclusion | N/O | | 17. Proper reheating procedures for hot holding | N/O | |
| **Good Hygienic Practices** | | | 18. Proper cooling time & temperature | N/O | |
| 4. Proper eating, tasting, drinking, or tobacco use | In | | 19. Proper hot holding temperature | In | |
| 5. No discharge from eyes, nose, and mouth | N/O | | 20. Proper cold holding temperature | N/O | |
| **Preventing Contamination by hands** | | | 21. Proper date marking & disposition | N/O | |
| 6. Hands clean & properly washed | N/O | | 22. Time as a public health control; procedures & record | N/O | |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | N/O | | **Consumer Advisory** | | |
| 8. Adequate handwashing facilities supplied & accessible | N/O | | 23. Consumer advisory provided for raw or undercooked foods | N/O | |
| **Approved Source** | | | **Highly Susceptible Population** | | |
| 9. Food obtained from approved source | N/O | | 24. Pasteurized foods used; prohibited foods not offered | N/O | |
| 10. Food received at proper temperature | N/O | | **Chemical** | | |
| 11. Food in good condition, safe, & unadulterated | N/O | | 25. Food additives: approved & properly used | N/O | |
| 12. Required records available: shellstock tags, parasite destruction | N/O | | 26. Toxic substances properly identified, stored & used | N/O | |
| **Protection From Contamination** | | | **Conformance with Approved Procedure** | | |
| 13. Food separated & protected from cross contamination | In | | 27. Compliance with variance, specialized process, & HACCP plan | N/O | |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

| | | | | | |
|---|---|---|---|---|---|
| **Safe Food and Water** | | | **Proper Use of Utensils** | | |
| 28. Pasteurized eggs used where required | N/O | | 41. In-use utensils: properly stored | N/O | |
| 29. Water & ice from approved source | N/O | | 42. Utensils, equipment & linens: properly stored, dried & handled | N/O | |
| 30. Variance obtained for specialized processing methods | N/O | | 43. Single-use & single-service articles: properly stored & used | N/O | |
| **Food Temperature Control** | | | 44. Gloves used properly | N/O | |
| 31. Proper cooling methods used; adequate equipment for temperature control | N/O | | **Utensils, Equipment and Vending** | | |
| 32. Fruits and vegetables cooked properly for hot holding | N/O | | 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | In | |
| 33. Approved thawing methods used | N/O | | 46. Warewashing facilities: installed, maintained, & used; test strips | N/O | |
| 34. Thermometer provided & accurate | N/O | | 47. Non-food contact surfaces clean | N/O | |
| **Food Identification** | | | **Physical Facilities** | | |
| 35. Food properly labeled; original container | N/O | | 48. Hot & cold water available; adequate pressure | N/O | |
| **Prevention of Food Contamination** | | | 49. Plumbing installed; proper backflow devices | N/O | |
| 36. Insects, rodents & animals not present | N/O | | 50. Sewage & waste water properly disposed | N/O | |
| 37. Contamination prevented during food preparation, storage & display | N/O | | 51. Toilet facilities: properly constructed, supplied, & cleaned | N/O | |
| 38. Personal cleanliness | N/O | | 52. Garbage & refuse properly disposed; facilities maintained | N/O | |
| 39. Wiping cloths: properly used & stored | N/O | | 53. Physical facilities installed, maintained, & clean | N/O | |
| 40. Washing fruit & vegetables | N/O | | 54. Adequate ventilation & lighting; designated areas used | N/O | |

### FOOD EMPLOYEE CERTIFICATION

| | | |
|---|---|---|
| **Certified Food Manager** | | |
| 55. Certification displayed properly and is up-to-date. | N/O | |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 2/4/2025 | (Signature on File) | | 2/4/2025 | Carrie Lane | *Carrie A Lane* | 2/4/2025 | 8:15 AM | 10:00 AM |

2/5/2025 5:02:46 AM

**MASSI-00114**

Page 1 of 2



**Chester County Health Department**
**Chester County Government Services Center**

**Food & Institutions Division**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19380
610-344-5938

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1105212
Insp. Date: 2/4/2025
Insp. Reason:  Follow-up
No. of Risk Factors: 0
No. of Repeat Risk Factors: 0
Overall Compliance: IN

### PUBLISHED COMMENTS

Foods were being properly handled properly.  Hot foods were being held in the warming boxes.

All dishwashers are running properly.  ODR dish temp 172F  Main dishwasher dish temp 168F

The new steam table is in place.  Eggs 173F and rice 167F in steam table.  Ensure table is turned on well in advance of foods being placed in it.

3 Door refrigerator is awaiting repair and new door gaskets.  New ODR refrigerator is also awaiting repairs.

Log books were reviewed.  While temperatures are being taken, the way temps are being logged is not consistent between staff.  It is expected that a final cook temp is taken and logged.  Temp checks while foods are in hot holding must also be taken and a final temp taken of the last food to go out for service.  All of those items must be logged.  Current log sheets should be adequate.

Currently no log sheets are used for Diets line foods.  You must begin logging these food items as well.
It was also learned that no "Dead Man Tray" is kept for the Diets line.  These foods are different from the main food line and should also be trayed and held for 72 hours.
Begin saving these trays.

A non-traffic citation was filed against Aramark for discarding food that was placed under a hold order.  The citation has gone to warrant.  Aramark must enter a plea in order for a new license to be issued this year.  Please contact the Kennett Square District Court for information.

Exhibit D-8



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19382
610-344-6225

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1119843
Insp. Date: 4/24/2025
Insp. Reason:  Regular
No. of Risk Factors: 4
No. of Repeat Risk Factors: 2
Overall Compliance: OUT

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS
Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

| Supervision | | | |
|---|---|---|---|
| 1. Person in charge present, demonstrates knowledge, & performs duties | In | 14. Food-contact surfaces: cleaned & sanitized | Out |
| **Employee Health** | | 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | In |
| 2. Management & food employee knowledge, responsibilities & reporting | In | **Time/Temperature Controlled for Safety Food (TCS Food)** | |
| 3. Proper use of restriction & exclusion | In | 16. Proper cooking time & temperature | In |
| **Good Hygienic Practices** | | 17. Proper reheating procedures for hot holding | In |
| 4. Proper eating, tasting, drinking, or tobacco use | In | 18. Proper cooling time & temperature | Out |
| 5. No discharge from eyes, nose, and mouth | In | 19. Proper hot holding temperature | In |
| **Preventing Contamination by hands** | | 20. Proper cold holding temperature | Out |
| 6. Hands clean & properly washed | In | 21. Proper date marking & disposition | In |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | In | 22. Time as a public health control; procedures & record | In |
| 8. Adequate handwashing facilities supplied & accessible | Out | **Consumer Advisory** | |
| **Approved Source** | | 23. Consumer advisory provided for raw or undercooked foods | N/A |
| 9. Food obtained from approved source | In | **Highly Susceptible Population** | |
| 10. Food received at proper temperature | In | 24. Pasteurized foods used; prohibited foods not offered | In |
| 11. Food in good condition, safe, & unadulterated | In | **Chemical** | |
| 12. Required records available: shellstock tags, parasite destruction | N/A | 25. Food additives: approved & properly used | N/A |
| **Protection From Contamination** | | 26. Toxic substances properly identified, stored & used | In |
| 13. Food separated & protected from cross contamination | In | **Conformance with Approved Procedure** | |
| | | 27. Compliance with variance, specialized process, & HACCP plan | N/A |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

| Safe Food and Water | | | |
|---|---|---|---|
| 28. Pasteurized eggs used where required | N/A | **Proper Use of Utensils** | |
| 29. Water & ice from approved source | In | 41. In-use utensils: properly stored | In |
| 30. Variance obtained for specialized processing methods | N/A | 42. Utensils, equipment & linens: properly stored, dried & handled | In |
| **Food Temperature Control** | | 43. Single-use & single-service articles: properly stored & used | In |
| 31. Proper cooling methods used; adequate equipment for temperature control | In | 44. Gloves used properly | In |
| 32. Fruits and vegetables cooked properly for hot holding | In | **Utensils, Equipment and Vending** | |
| 33. Approved thawing methods used | In | 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | In |
| 34. Thermometer provided & accurate | In | 46. Warewashing facilities: installed, maintained, & used; test strips | In |
| **Food Identification** | | 47. Non-food contact surfaces clean | Out |
| 35. Food properly labeled; original container | In | **Physical Facilities** | |
| **Prevention of Food Contamination** | | 48. Hot & cold water available; adequate pressure | In |
| 36. Insects, rodents & animals not present | Out | 49. Plumbing installed; proper backflow devices | Out |
| 37. Contamination prevented during food preparation, storage & display | In | 50. Sewage & waste water properly disposed | In |
| 38. Personal cleanliness | In | 51. Toilet facilities: properly constructed, supplied, & cleaned | In |
| 39. Wiping cloths: properly used & stored | In | 52. Garbage & refuse properly disposed; facilities maintained | In |
| 40. Washing fruit & vegetables | In | 53. Physical facilities installed, maintained, & clean | Out |
| | | 54. Adequate ventilation & lighting; designated areas used | In |

### FOOD EMPLOYEE CERTIFICATION

| Certified Food Manager | | | |
|---|---|---|---|
| 55. Certification displayed properly and is up-to-date. | Out | | |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 4/24/2025 | emailed report (Signature on File) | | 4/24/2025 | Carrie Lane | *Carrie A Lane* | 4/24/2025 | 8:30 AM | 11:30 AM |

4/25/2025 4:11:16 AM

**MASSI-00116**



**Chester County Health Department**
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19382
610-344-6225

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON  Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1119843
Insp. Date: 4/24/2025
Insp. Reason: Regular
No. of Risk Factors: 4
No. of Repeat Risk Factors: 2
Overall Compliance: OUT

### OBSERVATIONS AND CORRECTIVE ACTIONS
Violations cited in this report must be corrected within the timeframes below

| Item Number | Violation of Code | Comment | Correct By Date | Repeat Violation |
|---|---|---|---|---|
| 8. | 5 - 202.12 | Work Release: The handwash sink located in the kitchen restroom does not run for at least 15 seconds when activated. Adjust handles. | 4/29/2025 | |
| 8. | 5 - 202.12 | Hot water at the ODR kitchen hand sink was 51F. Hot water must be at least 85F for hand washing. Hot water must be supplied at this sink at all times. A temporary hand station must be set up at the sink using a cooler with a spout. Fill it with hot water for use at the sink. This is a repeat violation. If repairs cannot keep water of 85F or more at this sink, an on-demand hot water heater will be required at this sink. | 4/25/2025 | |
| 14. | 4 - 501.114 | Kitchen 3 bay sink - Quat ammonia concentration was over 400ppm. Contact Ecolab to properly adjust auto dispensing unit. Sanitizer can be diluted with water to meet the 200-400ppm requirement until dispenser is adjusted. Use test strips to check concentration each time sink is filled. | 4/25/2025 | |
| 18. | 3 - 501.14 | Potatoes that were made on 4/23/25 had an internal temp of 52F. No temp records for the cooking and cooling process were completed. Potatoes never reached 41F. Potatoes were discarded. As discussed temp checks must be done throughout the cooling process to ensure foods cool from 135F to 70F within 2 hours, and to 41F within 4 more hours. | 4/24/2025 | |
| 20. | 3 - 501.16(A2)(B) | ODR - sandwich unit was 48F. No foods were stored in the unit during inspection. Ensure no foods are stored in this unit until it can maintain 41F or less. | 4/26/2025 | |
| 31. | 3 - 501.15 | Potatoes made 4/23 were found tightly covered and stacked on top of each other. When cooling to not tightly cover or stack foods. | 4/24/2025 | |
| 36. | 6 - 501.111 | Fruit flies were found in the Kitchen and ODR. Keep areas clean and dry. Contact Ecolab for chemical control options. | 4/25/2025 | |
| 47. | 4 - 602.13 | Clean the following in the Kitchen: 1. Floor behind pizza oven - completed during inspection  2. Walk in freezer floor  3. ODR - area around dishwasher including the black plastic shelving. Keep these clean and dry to prevent fruit fly breeding. | 4/28/2025 | |
| 49. | 5 - 205.15 | Water filter is leaking (behind the ice machine). Repair leak.  Hand sink near the conveyor dishwasher - no cold water supplied. Water quickly became too hot to properly wash hands. Repair sink to supply hot and cold water. | 4/25/2025 | |
| 49. | 5 - 205.15 | Work Release: 1. Repair loose, leaking faucet on prep sink.  2. Walk in cooler - condensate line is leaking. Repair leak. | 4/28/2025 | |
| 53. | 6 - 201.11 | ODR: Re-grout that floor area near the dishwasher to facilitate cleaning and prohibit insect breeding.  Kitchen Mop Room: 1. Paint walls 2. Install mop hangers | 4/30/2025 | |
| 53. | 6 - 202.15 | Work Release: Install a new door sweep on the dock door. | 4/29/2025 | |
| 55. | CFM | Katrina Smith must apply for a Chester County Certificate. Link to apply will be emailed to her. | 4/29/2025 | |

4/25/2025 4:11:16 AM



**Chester County Health Department**
**Chester County Government Services Center**

**Food & Institutions Division**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19382
610-344-6225

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone:

Insp. ID: 1119843
Insp. Date: 4/24/2025
Insp. Reason: Regular
No. of Risk Factors: 4
No. of Repeat Risk Factors: 2
Overall Compliance: OUT

### PUBLISHED COMMENTS

Ice machine (entire machine) must be cleaned and sanitized at least quarterly.  See manufacturers instructions on how to complete this cleaning.

Turbo Air refrigerator - Dept recommends resetting the defrost cycle so that it doesn't occur during busy production hours.

Ceiling panels to be replaced in ODR and Work Release.  All new pots and pans to be supplied to Work Release.
Staff and Inmates will be taking Serv Safe training in June.

Continue working on keeping food logs up to date and accurate.

All refrigeration (unless noted above) 41F or less
Hot foods - all met required cooking temps and hot holding requirements
Dishwashers - Kitchen dish surface 162F  ODR Dish surface 161F
Hot water >115  Quat >400ppm

Work Release is planning to open next Month.  Permission to use that kitchen is granted.  Notify Dept when food production begins in that kitchen.

A follow-up inspection will be conducted to ensure compliance with the above. If violations have not been corrected by the time of this visit, the License to Operate will not be issued and a fee of $250 will be charged. A fee of $350 will be charged for a third follow-up inspection and for each subsequent inspection thereafter as necessary to verify that violations have been corrected. The license will not be issued until all violations have been corrected and all fees have been paid.

4/25/2025 4:11:16 AM

**MASSI-00118**

Exhibit D-9



# Chester County Health Department
**Chester County Government Services Center**

**Food & Institutions Division**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19382
610-344-6225

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone: (610) 344-5040

Insp. ID: 1125941
Insp. Date: 5/29/2025
Insp. Reason: Follow-up
No. of Risk Factors: 0
No. of Repeat Risk Factors: 0
Overall Compliance: IN

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS
Risk Factors are important practices and procedures identified as the most prevalent contributing factors of foodborne illness or injury.
Public Health Intervention are control measures to prevent foodborne illness or injury.

IN = In Compliance, OUT = Out of Compliance, N/O = Not Observed, N/A = Not Applicable, C = Corrected On Site, R = Repeat Violation

**Supervision**

| | |
|---|---|
| 1. Person in charge present, demonstrates knowledge, & performs duties | N/O |

**Employee Health**

| | |
|---|---|
| 2. Management & food employee knowledge, responsibilities & reporting | N/O |
| 3. Proper use of restriction & exclusion | N/O |

**Good Hygienic Practices**

| | |
|---|---|
| 4. Proper eating, tasting, drinking, or tobacco use | N/O |
| 5. No discharge from eyes, nose, and mouth | N/O |

**Preventing Contamination by hands**

| | |
|---|---|
| 6. Hands clean & properly washed | N/O |
| 7. No bare hand contact with RTE foods or approved alternate method properly followed | N/O |
| 8. Adequate handwashing facilities supplied & accessible | In |

**Approved Source**

| | |
|---|---|
| 9. Food obtained from approved source | N/O |
| 10. Food received at proper temperature | N/O |
| 11. Food in good condition, safe, & unadulterated | N/O |
| 12. Required records available: shellstock tags, parasite destruction | N/O |

**Protection From Contamination**

| | |
|---|---|
| 13. Food separated & protected from cross contamination | N/O |

| | |
|---|---|
| 14. Food-contact surfaces: cleaned & sanitized | N/O |
| 15. Proper disposition of returned, previously served, reconditioned, & unsafe food | N/O |

**Time/Temperature Controlled for Safety Food (TCS Food)**

| | |
|---|---|
| 16. Proper cooking time & temperature | N/O |
| 17. Proper reheating procedures for hot holding | N/O |
| 18. Proper cooling time & temperature | In |
| 19. Proper hot holding temperature | N/O |
| 20. Proper cold holding temperature | In |
| 21. Proper date marking & disposition | N/O |
| 22. Time as a public health control; procedures & record | N/O |

**Consumer Advisory**

| | |
|---|---|
| 23. Consumer advisory provided for raw or undercooked foods | N/O |

**Highly Susceptible Population**

| | |
|---|---|
| 24. Pasteurized foods used; prohibited foods not offered | N/O |

**Chemical**

| | |
|---|---|
| 25. Food additives: approved & properly used | N/O |
| 26. Toxic substances properly identified, stored & used | N/O |

**Conformance with Approved Procedure**

| | |
|---|---|
| 27. Compliance with variance, specialized process, & HACCP plan | N/O |

### GOOD RETAIL PRACTICES
Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects into foods.

**Safe Food and Water**

| | |
|---|---|
| 28. Pasteurized eggs used where required | N/O |
| 29. Water & ice from approved source | N/O |
| 30. Variance obtained for specialized processing methods | N/O |

**Food Temperature Control**

| | |
|---|---|
| 31. Proper cooling methods used; adequate equipment for temperature control | N/O |
| 32. Fruits and vegetables cooked properly for hot holding | N/O |
| 33. Approved thawing methods used | N/O |
| 34. Thermometer provided & accurate | N/O |

**Food Identification**

| | |
|---|---|
| 35. Food properly labeled; original container | N/O |

**Prevention of Food Contamination**

| | |
|---|---|
| 36. Insects, rodents & animals not present | In |
| 37. Contamination prevented during food preparation, storage & display | N/O |
| 38. Personal cleanliness | N/O |
| 39. Wiping cloths: properly used & stored | N/O |
| 40. Washing fruit & vegetables | N/O |

**Proper Use of Utensils**

| | |
|---|---|
| 41. In-use utensils: properly stored | N/O |
| 42. Utensils, equipment & linens: properly stored, dried & handled | N/O |
| 43. Single-use & single-service articles: properly stored & used | N/O |
| 44. Gloves used properly | N/O |

**Utensils, Equipment and Vending**

| | |
|---|---|
| 45. Food & non-food contact surfaces cleanable, properly designed, constructed, & used | N/O |
| 46. Warewashing facilities: installed, maintained, & used; test strips | N/O |
| 47. Non-food contact surfaces clean | In |

**Physical Facilities**

| | |
|---|---|
| 48. Hot & cold water available; adequate pressure | N/O |
| 49. Plumbing installed; proper backflow devices | In |
| 50. Sewage & waste water properly disposed | N/O |
| 51. Toilet facilities: properly constructed, supplied, & cleaned | N/O |
| 52. Garbage & refuse properly disposed; facilities maintained | N/O |
| 53. Physical facilities installed, maintained, & clean | In |
| 54. Adequate ventilation & lighting; designated areas used | N/O |

### FOOD EMPLOYEE CERTIFICATION

**Certified Food Manager**

| | |
|---|---|
| 55. Certification displayed properly and is up-to-date. | In |

| Visit Date | Person In Charge | Person In Charge Signature | Sig. Date | Sanitarian | Sanitarian Signature | Sig. Date | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| 5/29/2025 | emailed report (Signature on File) | | 5/30/2025 | Carrie Lane | *Carrie A Lane* | 5/30/2025 | 1:00 PM | 2:15 PM |

5/31/2025 5:13:40 AM

MASSI-00119

Page 1 of 2



### Chester County Health Department
**Chester County Government Services Center**

601 WESTTOWN RD STE 288
WEST CHESTER, PA 19382
610-344-6225

**Food & Institutions Division**

## Retail Food Facility Inspection Report

Facility: ARAMARK @ CHESTER COUNTY PRISON Facility ID: 92047
Owner: ARAMARK @ CHESTER COUNTY PRISON
Address: 501 S Wawaset RD
City/State: WEST CHESTER PA
Zip: 19382  County: Chester  Region: Territory 7S
Phone: (610) 344-5040

Insp. ID: 1125941
Insp. Date: 5/29/2025
Insp. Reason:  Follow-up
No. of Risk Factors: 0
No. of Repeat Risk Factors: 0
Overall Compliance: IN

### PUBLISHED COMMENTS

All items at the Work Release have been completed.

Hot water in the ODR was 103F.  Be reminded that hot water of at least 85F is required at this sink at all times.  Failure to maintain water at 85F during any future inspection will require the installation of an on-demand water heater at this sink.

Quat at 3 bay 300ppm
No foods cooling today- temp logs show cooling process is now being monitored.
No foods improperly stacked.
ODR sandwich unit 28F
No fruit flies observed.
Water filter replaced.
All cleaning completed.
Mop sink room painted and mop hooks installed - use the hooks to hang the mops
ODR floor near dishwasher has been re-grouted.
Katrina Smith received her CCHD certificate.

Temp logs were reviewed and found to be complete.  Foods are currently placed in walk in freezer to quickly cool.  Blast chiller in kitchen is the proper equipment to use for cooling - it is broken, but parts are to be ordered. Repair blast chiller and begin using it to cool foods instead of the walk in freezer.

Notify Dept when Work Release kitchen begins operation.

License issued.

Exhibit E

Declaration of Authentication
In Support of Exhibit E

I Wilson J. Velez-Santiago hereby declare that the enclosed Exhibit E "The ▓▓▓ County of Chester Job Description" is a true and correct copy and a self-authenticated document produced by defendant Mass." on the record as ECF document 29-3 on January 6, 2026. It is admissible evidence under the rules. This declaration is made subject to the pain and penalties of perjury.

Wilson J Velez se
Wilson J Velez-Santiago

Date: 3/02/2026

# The County of Chester
# Job Description

**Job Code:** 040320
**Job Title:** Prison Supervisor II – Kitchen Supervisor
**Department:** Chester County Prison
**Department #:** 210000
**Reports To:** Director of Inmate Services
**Date:** Revised March 2021
**FLSA:** Non-Exempt
Non-Union

Does the job necessitate a criminal background check? (must be job related) Yes

## Summary / Main Purpose of Job:
The Prison Supervisor II is responsible for supervising and managing all job-related areas and ensuring that all people assigned to their responsibility operate in an efficient, timely, secure and orderly fashion.

## Essential Duties, Tasks and Accountabilities:
- Maintain security and order in the work place by administering all rules, regulations, policies and procedure to inmates, staff and approved outside contractors.
- Ensure that all meals are made and distributed in a timely manner.
- Provide supervision in all aspects of the food service department.
- Directly or indirectly assess the work area to ensure efficient implementation of all work details and assignments for supervisors, Inmates and the private sector contractors.
- Ensure proper communication with inmates and staff.
- Provide and conduct training, direction and instruction of contract staff and or inmates in all aspects of food service.
- Assist with maintaining accurate updated files on work orders, supplies, inmates and personnel.
- Maintain and submit weekly inmate payroll.
- Assist in annual food service budget.
- Assist in drafting of any food service related RFP's and or invitation to bid.
- Obtain and maintain all needed food certifications. Ex: ServSafe instructor.
- Submit invoices for equipment and supplies.
- Serve as liaison to outside agencies.
- Provide problem-solving skills to inmates, staff and job assignments.
- Perform other duties, tasks and special projects, as required.

## Scope:
Is this a management level position?     No
    Provide the number of direct reports to this position.     3
    Provide the number of indirect reports to this position.     50
Does this job have supervisory responsibilities?  Yes

## Qualifications / Requirements:
- High School Diploma or General Education Degree (GED).
- Graduation from Correctional Academy.
- Six months to one year of job-related experience.
- CPR and First Aid training.
- Demonstrates integrity and honesty.
- Exhibits sound and accurate judgement.

- General understanding of Human Resource guidelines.
- Ability to handle and resolve recurring problems.
- Easily adapts to changes in the work environment.
- Strong interpersonal skills.
- Strong leadership skills.
- Basic skill to use a personal computer and various software packages.
- A valid driver's license is required.

## Preferred Skills, Knowledge & Experience:
- At least three years of Correctional experience.
- At least two years of supervisory experience.
- Five years of food service experience.
- Working knowledge of all security-related policies and procedures as they pertain to the institution.
- Strong professional ethics.
- Treats others with respect and consideration regardless of their status or position.
- Strong time management skills.
- Ability to work as part of a team.
- Ability to interface effectively with all levels of county management.

## Computer Skills:
To perform this job successfully, an individual should have:
- Basic Word skills
- Basic Excel skills
- Basic OutLook skills (Email and Calendar)
- Basic Internet Explorer skills
- Basic Microsoft Office skills

## Physical Demands:
While performing the duties of this position, the employee is frequently required to stand; walk; reach or work with arms above shoulders; bend at the waist; kneel, stoop, crouch or squat; climb stairs; lift or carry items; work with machinery; work with an uncommon level of noise; taste or smell; and talk or hear.

The special vision requirements listed for this position are:
- Close vision (clear vision at 20 inches or less)
- Distance vision (clear vision at 20 feet or more)
- Peripheral vision ability to observe an area that can be seen up and down or to the left and right while eyes are fixed on a given point)
- Depth perception (three-dimensional vision, ability to judge distances and spatial relationships)
- Color vision (ability to identify and distinguish colors)

All of the above listed vision requirements are necessary due to the observation of inmates and the environment in which they reside. Must have a total awareness of the surroundings and ensure the level of security and safety are appropriate at all times.

**Work Environment:**
- The noise level in the work environment is usually moderate to loud.
- This is a highly stressful work environment.
- Required to work with criminals (may have contagious and/or infectious medical conditions).
- Required to work with mentally impaired individuals (some may have severe conditions).
- Everyday conditions may lead to life threatening situations (e.g., hostage situations, riots, assaults, infections, etc.).
- Correctional staff work unarmed.
- Will work with or around large machinery.
- Will work with or around chemicals, food, debris, etc.,

**Other:**
- Ability to work extended hours, as necessary.
- This position requires professionalism.

Exhibit F

Declaration of Authentication
In Support of Exhibit F

I Wilson J Velez-Santiago do hereby declare under the pains and penalties of perjury that the enclosed Exhibit F "Defendant Joshua Massi's Answers To Plantiff's request For Interrogatories" is a true and correct copy and self authenticated document produced by defendant Massi and put on the record by him as Ecf document 29-2 on January 6, 2026 and is admissible evidence.

Wilson J Velez Sc
Wilson J Velez-Santiago

Date: 3/02/2026

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILSON JUNIOR VELEZ-SANTIAGO | : | Civil Action No. 25-cv-00563 |
| Plaintiff | : | |
| v. | : | |
| ARAMARK CORRECTIONAL SERVICES, et al. | : | |
| Defendants. | : | |

**DEFENDANT JOSHUA MASSI'S
ANSWERS TO PLAINTIFF'S REQUEST FOR INTERROGATORIES**

Defendant, Joshua Massi, hereby incorporates by reference into each Interrogatory the following objections. A specific objection may repeat a general objection for emphasis or for some other reason. The failure to include any general objection within any specific response shall not be interpreted as waiver of any general objection to that Interrogatory.

1.      Defendant objects to each Interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any applicable common law or constitutional privilege. All references to "privileged" information or documents in these responses include the privileges identified in the preceding sentence. Nothing contained in these responses is intended to, nor shall be deemed, a waiver of any such available privilege or immunity. To the extent any of the Interrogatories call for such privileged or protected information, Defendant objects to the Interrogatory and asserts that privilege and protection. If any such privileged document is disclosed, except pursuant to a specific written agreement concerning that document, the disclosure shall be deemed inadvertent and shall not be evidence of an intention to waive any applicable privilege or immunity.

2.      Defendant reserves the right to challenge the competency, relevance, materiality, and admissibility of or to object on any ground to the use of information set forth herein or documents produced in response to any Interrogatory at subsequent proceedings or the trial of this or any other action.

3.      Defendant objects to each of the Interrogatories to the extent they request discovery not within Defendant's possession, custody, or control, require Defendant to conduct an investigation of sources beyond Defendant's control, or to the extent they purport to impose on Defendant the burden of furnishing information which is equally or more readily available to the requesting party.

4.      Defendant objects to these Interrogatories to the extent that they seek information protected from disclosure as confidential or personal information.

5.      Defendant objects to the Interrogatories to the extent they seek to impose obligations greater than or different from those imposed by the Federal Rules of Civil Procedure.

6.      Defendant objects to each of the Interrogatories to the extent they seek information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.

7.      Defendant objects to each of the Interrogatories to the extent they are overly broad, unduly burdensome, and/or oppressive.

8.      Defendant objects to each of the Interrogatories to the extent they are vague and/or ambiguous. Where possible, however, Defendant will make reasonable assumptions as to the requesting party's intended meaning and will respond accordingly, while preserving its objections as to vagueness, ambiguity, and uncertainty.

2

## RESPONSES TO INTERROGATORIES

1.      Joshua Massi, while employed at the Chester County prison as the Kitchen Supervisor, what was the scope of your duties within the kitchen?

**Response:   See attached Job Description for Prison Supervisor II – Kitchen Supervisor (MASSI 00121 – MASSI 00123).**

2.      As the Kitchen Supervisor for the prison were you ever aware of the prison wide food poison episodes in which multiple inmates reported stomach illness after eating the prison foods?

**Response:   Yes, on one occasion. On October 2, 2024, there were multiple complaints in the morning from the inmates complaining (not necessarily of food poisoning) but gastrointestinal symptoms.**

3.      Have you ever participated in any Audit or inspection which yielded negative reports by the Inspecting Agency specifically as the results of unsanitary conditions within the kitchen? (This includes any violation of state or federal Health and Sanitation codes.)

**Response: Yes. Records of those inspections have already been produced.**

**LAMB McERLANE PC**

Dated: November 6, 2025

By:   */s/ Guy A. Donatelli*
      Guy A. Donatelli
      Attorney ID No. 44205
      24 E. Market Street
      West Chester, PA 19381
      gdonatelli@lambmcerlane.com
      610-430-8000

      *Counsel for Defendant, Joshua Massi*

3

Case 2:25-cv-00563-NIQA    Document 34-2    Filed 03/05/26    Page 121 of 138
Case 2:25-cv-00563-NIQA    Document 29-2    Filed 01/06/26    Page 4 of 8

## VERIFICATION

I, Joshua Massi, hereby affirm that I am authorized to take this Verification and that the facts set forth in the attached *DEFENDANT JOSHUA MASSI'S ANSWERS TO PLAINTIFF'S REQUEST FOR INTERROGATORIES* are true and correct to the best of my knowledge, information and belief. I understand that false statements therein are subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

Date: November 5, 20025          Joshua Massi
                                 JOSHUA MASSI

# The County of Chester
# Job Description

**Job Code:**        040320
**Job Title:**       Prison Supervisor II – Kitchen Supervisor
**Department:**      Chester County Prison
**Department #:**    210000
**Reports To:**      Director of Inmate Services
**Date:**            Revised March 2021
**FLSA:**            Non-Exempt
                     Non-Union

Does the job necessitate a criminal background check? (must be job related) Yes

**Summary / Main Purpose of Job:**
The Prison Supervisor II is responsible for supervising and managing all job-related areas and ensuring that all people assigned to their responsibility operate in an efficient, timely, secure and orderly fashion.

**Essential Duties, Tasks and Accountabilities:**
- Maintain security and order in the work place by administering all rules, regulations, policies and procedure to inmates, staff and approved outside contractors.
- Ensure that all meals are made and distributed in a timely manner.
- Provide supervision in all aspects of the food service department.
- Directly or indirectly assess the work area to ensure efficient implementation of all work details and assignments for supervisors, inmates and the private sector contractors.
- Ensure proper communication with inmates and staff.
- Provide and conduct training, direction and instruction of contract staff and or inmates in all aspects of food service.
- Assist with maintaining accurate updated files on work orders, supplies, inmates and personnel.
- Maintain and submit weekly inmate payroll.
- Assist in annual food service budget.
- Assist in drafting of any food service related RFP's and or invitation to bid.
- Obtain and maintain all needed food certifications. Ex: ServSafe Instructor.
- Submit invoices for equipment and supplies.
- Serve as liaison to outside agencies.
- Provide problem-solving skills to inmates, staff and job assignments.
- Perform other duties, tasks and special projects, as required.

**Scope:**
Is this a management level position?    No
    Provide the number of direct reports to this position.    3
    Provide the number of indirect reports to this position.    50
Does this job have supervisory responsibilities? Yes

**Qualifications / Requirements:**
- High School Diploma or General Education Degree (GED).
- Graduation from Correctional Academy.
- Six months to one year of job-related experience.
- CPR and First Aid training.
- Demonstrates integrity and honesty.
- Exhibits sound and accurate judgement.

MASSI 00121

- General understanding of Human Resource guidelines.
- Ability to handle and resolve recurring problems.
- Easily adapts to changes in the work environment.
- Strong interpersonal skills.
- Strong leadership skills.
- Basic skill to use a personal computer and various software packages.
- A valid driver's license is required.

## Preferred Skills, Knowledge & Experience:
- At least three years of Correctional experience.
- At least two years of supervisory experience.
- Five years of food service experience.
- Working knowledge of all security-related policies and procedures as they pertain to the institution.
- Strong professional ethics.
- Treats others with respect and consideration regardless of their status or position.
- Strong time management skills.
- Ability to work as part of a team.
- Ability to interface effectively with all levels of county management.

## Computer Skills:
To perform this job successfully, an individual should have:
- Basic Word skills
- Basic Excel skills
- Basic OutLook skills (Email and Calendar)
- Basic Internet Explorer skills
- Basic Microsoft Office skills

## Physical Demands:
While performing the duties of this position, the employee is frequently required to stand; walk; reach or work with arms above shoulders; bend at the waist; kneel, stoop, crouch or squat; climb stairs; lift or carry items; work with machinery; work with an uncommon level of noise; taste or smell; and talk or hear.

The special vision requirements listed for this position are:
- Close vision (clear vision at 20 inches or less)
- Distance vision (clear vision at 20 feet or more)
- Peripheral vision ability to observe an area that can be seen up and down or to the left and right while eyes are fixed on a given point)
- Depth perception (three-dimensional vision, ability to judge distances and spatial relationships)
- Color vision (ability to identify and distinguish colors)

All of the above listed vision requirements are necessary due to the observation of inmates and the environment in which they reside.  Must have a total awareness of the surroundings and ensure the level of security and safety are appropriate at all times.

## Work Environment:

- The noise level in the work environment is usually moderate to loud.
- This is a highly stressful work environment.
- Required to work with criminals (may have contagious and/or infectious medical conditions).
- Required to work with mentally impaired individuals (some may have severe conditions).
- Everyday conditions may lead to life threatening situations (e.g., hostage situations, riots, assaults, infections, etc.).
- Correctional staff work unarmed.
- Will work with or around large machinery.
- Will work with or around chemicals, food, debris, etc.,

## Other:

- Ability to work extended hours, as necessary.
- This position requires professionalism.

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILSON JUNIOR VELEZ-SANTIAGO | : | Civil Action No. 25-cv-00563 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| ARAMARK CORRECTIONAL SERVICES, et al. | : | |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

This is to certify that in this case complete copies of the foregoing Defendant Joshua Massi's Answers to Plaintiff's Request for Interrogatories have been served upon the following person(s), by the following means and on the date(s) stated:

| Name | Means of Service | Date of Service |
|---|---|---|
| Wilson Junior Velez-Santiago #0070317 Chester County Prison 501 S. Wawaset Road West Chester, PA 19382 | First Class Mail | November 6, 2025 |
| Theresa Giamanco, Esq. Michael Dolich, Esq. Bennett Bricklin & Saltzburg LLC 6000 Sagemore Drive, Suite 6103 Marlton, NJ 08053 | First Class Mail | November 6, 2025 |

**LAMB McERLANE PC**

Dated: November 6, 2025

By:  /s/ Guy A. Donatelli

Guy A. Donatelli
Attorney ID No. 44205
24 E. Market Street
West Chester, PA 19381
gdonatelli@lambmcerlane.com
610-430-8000

*Counsel for Defendant, Joshua Massi*

Exhibit G

In The United States District
Court For The Eastern District
Of Pennsylvania

Wilson J. Velez-Santiago
        Plantiff

       V.

Aramark Corr, Servs., et al.
        Defendant(s)

Civil Action No.
25-563

Plantiff's Second Attempt To Obtain
Interrogatories Pursuant to Fed.R.Civ.P 33
From Joshua Massi

Please provide responses to the following in
accordance to Rule 33;

1) Assuming that in the year or so you
were assigned the Job of Kitchen Supervisor at the
Chester County Prison you were a participant in any
Health Inspection(s) or Audit(s), have you during that
period of time aware by the Inspecting Agency of
any difficiencies within the prison's kitchen
concerning Sanitation?

2) Has there ever been a time in
which you exposed another Supervisor's misconduct
to an Auditing or Inspecting Agency concerning
the conditions of the Kitchen which resulted in
their termination from their Job?

Exhibit G-1

In The United States District
Court For The Eastern District
of Pennsylvania

Wilson J Velez-Santiago
                Plantiffs
            V.
Aramark Corr. Servs., et al
            Defendant(s)

Civil Action No.
25-0563

Plantiff's Second Set of Request
For Production Of Documents Pursuant to
Fed. R. Civ. P 34
Please provide the following Documents for
Inspection pursuant to Fed. R. Civ. P 34;

1) Please produce for copying and Inspection
any and all records of any Health Inspections or
Audits conducted on the Aramark Division and it's
employees at the Chester County Prison from
April of 2023 until April of 2024 and from
April of 2024 until September of 2025.

2) Please provide a full list of food
products Aramark correctional Services has
provided the Chester county Prison from

Exhibit 61-2

In The United States District Court
For The Eastern District Of Pennsylvania

Wilson J Velez-Santiago
            Plantiff          | Civil Action No
        v.                    |     25-0563
Aramark Corr. Servs., et al.  |
            Defendant(S)       |

Plantiff's Second Set of
Request For Interrogatories Pursuant to
        Fed.R.Civ.P 33

To the Aramark Defendant's, Please provide
the responses to the following request pursuant
to Rule 33;

        1) Does Aramark correctional services
provide Any Meat products which are considered
"Mechanically Seperated Chicken?"

        2) Does Aramark correctional Services
maintain a record of All products (food products)
it provides to the Chester County Prison?

        3) How often Does Aramark correctional
Services, within the Chester County Prison, and its

Exhibit G-3

Certificate of Service

I hereby certify that the foregoing "Plantiffs Second Attempt to obtain Interrogatories Pursuant to Fed.R.civ.P 33 From Joshua Massi" has been served via First class Mail on the parties as shown below;

Guy A. Donatelli, Esg.
24 E Market St.
Po Box 565
West Chester Pt 19381 (Attorney for J. Massi)

Michael Dolich, Esg.
6000 Sagemore Dr.
Suite 6103
Marlton NJ 08053 (Attorney for Aramark)

on this 13th day of January 2026

Wilsem J Velley Ae
Wilson J Velez-Santiago

Certificate of Service

In Re: Wilson J Velez Santiago V. Aramark Corr. Servs, et al -25-0563

I Plantiff Wilson J Velez Santiago do hereby certify that the foregoing Request For Production of Documents and Interrogatories directed to the Aramark Defendants have been served on all parties on this 15th day of January 2026 in the manner indicated below;

Via First Class Mail;

Guy A Donatelli, Esq.        ¦ Michael Dolich, Esq.
24 E Market St               ¦ Theresa Giamanco, Esg.
Po Box 565                   ¦ 6000 Sagemore Drive
West Chester PA 19381        ¦ Suite 6103
Attorney for J. Massi        ¦ Marlton NJ 08053
                             ¦ Attorney for Aramark Defendants

January 15 2026

Wilsen J Velly so
Wilson J Velez Santiago

# Certificate of Service

I Plantiff Wilson J Velez-Santiago do hereby certify that the foregoing Motion For Summary Judgment has been Served on all counsel of record in the manner indacted below;

Via first class Mail

Guy A. Donatelli, ESg.
24 E Market St
Po Box 565
West Chester PA 19381
Atty, For Joshua Massi

Michael Dolich, ESg.
Theresa Giamanco, ESg.
6000 Sagemore Dr. - Ste.6103
Marlton NJ 08053
Atty's. For Aramark

The Same has bee filed with the court.

Date: 3/02/2026                  Wilseam J Velly
                                 Wilson J Velez Santiago

23

SBI# 996788

DELAWARE DOC - ▓▓ James T Vaugh

▓▓▓▓▓▓▓ 1181 Paddock Road

▓▓▓▓▓ Smyrna DE 19977



US POSTAGE PITNEY BOWES

GND ADV

ZIP 19977
02 7W
0008036617 MAR 03 2026
$010.65⁰

X-RAY
USMIS

Legal
Mail

Clerk of Courts
601 Market Street
Room 2609
Philadephia PA 19106

UNITED STATES POSTAL SERVICE®
USPS TRACKING #

9114 9012 3080 3187 8615 63

Label 400 Jan. 2013
7690-19-000-7948

**RECEIVED**

MAR - 5 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

THIS LETTER WAS SENT BY AN INMATE WHO IS IN
STATE PRISON.  THE STATE IS NOT RESPONSIBLE FOR DEBTS
INCURRED OR FOR THE CONTENTS OF THE LETTER.